## RAILROAD COMPANIES *v.* GAINES.

1   A provision in the charter of a railroad company that "the capital stock of said company shall be for ever exempt from taxation, and the road, with all its fixtures and appurtenances, including workshops, machinery, and vehicles of transportation, shall be exempt from taxation for the period of twenty years from the completion of the road, and no longer," does not, after the expiration of that period, exempt from taxation the road, with its fixtures, &c., although the same were purchased with or represented by capital.

2.   In 1875, the State of Tennessee enacted a railroad tax law, the eleventh section of which provided that a railroad company accepting that section as a special amendment to its charter, and paying annually to the State one and one-half per cent on its gross receipts, should be exempt from other provisions of the act, and that such payment should be in full of all taxation. A company, whose charter, granted in 1846, exempted from taxation its capital stock for ever, and its road, fixtures, &c., for a specific period, which expired March 28, 1877, accepted the provisions of that section, and paid, for 1875 and 1876, the required percentage. That section having been declared by the Supreme Court of the State to be unconstitutional, it was repealed by an amendment, passed in 1877, which required such companies as had accepted and complied with its provisions to be assessed anew under the other sections of the act of 1875, credit to be given for sums paid by them, and any excess to be refunded. In a suit by the company to restrain the assessment and collection of the tax, — *Held*, that the Constitution of 1870, as construed by the highest judicial authority in the State, required all property to be uniformly taxed; and hence the legislature could not, in 1875, bind the State not to tax the company otherwise than as that

section provides, upon the surrender by the company of its charter ex emptions. Said amendment, so far as it subjected the property to taxation after March 28, 1877, did not, therefore, impair the obligation of a contract.

3. A., a railroad company, was by its charter invested, "for the purpose of *making and using said road*, with all the powers, rights, and privileges, and subject to all the disabilities and restrictions, that have been conferred and imposed upon" company B. The latter was by its charter exempt from taxation upon its capital stock for ever, and upon its road, fixtures, &c., for a term of years. *Held,* that the grant to A. did not include immunity from taxation.

ERROR to the Supreme Court of the State of Tennessee.

This was a suit in equity commenced in the Chancery Court of Davidson County, Tennessee, by three railroad companies, the Memphis and Charleston Railroad Company, the Mobile and Ohio Railroad Company, and the Knoxville and Charleston Railroad Company, plaintiffs in error, to restrain the defendants, who are officers of the State, from assessing and collecting taxes upon the property of the several corporations, under the provisions of " An Act declaring the mode and manner of valuing the property of a railroad company for taxation," passed March 20, 1875 (Acts 1875, p. 3100), as amended by " An Act to amend ' An Act entitled an act . . .' passed March 20, 1875, and to adjust the rights of the State and railroads in Tennessee under the decision of the Supreme Court, holding that the eleventh section of said act is unconstitutional," passed in March, 1877. Acts 1877, p. 33.

The section of the act of 1875, important to the consideration of this case, is, —

" SECT. 11. That each and every railroad company which will accept as a special amendment to its charter for a period of ten years from the first day of January, 1875, and that will pay annually to the treasurer of the State one and one-half per cent on the gross receipts from all sources of such company, shall be exempt from the provisions of the foregoing sections of this act, and the payment of said one and one-half per cent upon all gross earnings of such road shall be in full of all taxation. . . . Such railroads as do not accept the provisions of this section shall be taxed as provided for in the foregoing sections of this act: *Provided,* that the charters of all railroad companies accepting the provisions of this section shall be hereby so amended that after the expiration of said ten years no exemp-

tions of any property of said railroad company shall exist, but be placed upon the same footing as the property of other corporations or individuals. The charters of all railroad companies accepting the provisions of this section are hereby so amended that, after the lapse of the ten years aforesaid, every provision contained in the provisions of the charter of said companies exempting their property from taxation is hereby declared null and void, in as full and ample a manner as if the same was especially set forth in their respective charters."

Art. 2, sect. 28, of the Constitution of Tennessee, which took effect in 1870, is as follows : —

"All property, real, personal, or mixed, shall be taxed; but the legislature may except such as may be held by the State, by counties, cities, or towns, and used exclusively for public or corporation purposes, and such as may be held and used for purposes purely religious, charitable, scientific, literary, or educational; and shall except $1,000 worth of personal property in the hands of each taxpayer, and the direct products of the soil in the hands of the producer and his immediate vendee. All property shall be taxed according to its value, that value to be ascertained in such manner as the legislature shall direct, so that taxes shall be equal and uniform throughout the State. No one species of property from which a tax may be collected shall be taxed higher than any other species of property of the same value. But the legislature shall have power to tax merchants, pedlers, and privileges in such manner as they may from time to time direct. . . ."

"SECT. 29. The General Assembly shall have power to authorize the several counties and incorporated towns in this State to impose taxes for county and corporation purposes respectively, in such manner as shall be prescribed by law; and all property shall be taxed according to its value upon the principles established in regard to State taxation."

Art. 11, sect. 8, is as follows : —

"The legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land ; nor to pass any law granting to any individual or individuals, rights, privileges, immunities, or exemptions other than such as may be by the same law extended to any member of the community who may be able to bring himself within the provisions of such law. No corporation shall be created, or its powers increased or diminished,

by special laws; but the General Assembly shall provide by general laws for the organization of all corporations hereafter created, which laws may, at any time, be altered or repealed; and no such alteration or repeal shall interfere with or divest rights which have become vested."

On the 3d of February, 1877, the Supreme Court of Tennessee decided, in the case of *Ellis* v. *The Louisville & Nashville Railroad Co.*, not yet reported in the current series of reports, that the eleventh section of the Railroad Taxation Act of 1875 was unconstitutional and void, except perhaps as to corporations exempt from taxation by the terms of their charters and accepting the section, because it did not impose a tax upon the property of railroad companies equal and uniform with that imposed upon the property of individuals.

After this decision the amendment of 1877 was passed, by which sect. 11 of the act of 1875 was repealed, and the railroad tax assessors were required to assess all railroads in the State for the years 1877 and 1878, under the first ten sections of the act of 1875; and where any railroads had not been assessed under such sections " by reason of having accepted and complied with the provisions of the eleventh section of said act, or for any other cause," they were to be assessed for the years 1875 and 1876, as well as 1877 and 1878. Sect. 8. All railroads which had accepted and complied with the provisions of the eleventh section of the act of 1875 were allowed a credit for the sums paid under that section on the amounts assessed for the years 1875, 1876, 1877, and 1878, and if the sums paid exceeded the assessments for those years the excess was to be refunded with interest. Sect. 9.

Sect. 38 of the charter of the Memphis and Charleston Railroad Company is as follows : —

" The capital stock of said company shall be for ever exempt from taxation, and the road, with all its fixtures and appurtenances, including workshops, machinery, and vehicles of transportation, shall be exempt from taxation for the period of twenty years from the completion of the road, and no longer."

This company completed its road March 28, 1857. It also accepted the provisions of the eleventh section of the act of

1875, and paid the treasurer of State, Jan. 10, 1876, the one and one-half per cent of its gross earnings for the year 1875, amounting to $5,691, and, Jan. 10, 1877, $5,581, the percentage for 1876.

After the passage of the act of 1877, the State officers proceeded to make a valuation of the property of the company, and were taking the necessary steps to provide for the levy and collection of taxes. This suit was commenced to restrain such action, and the grounds for relief as alleged were, —

1. That the exemption of the capital stock of the company was an exemption of all the property of the company which had been procured with the capital.

2. That even if this were not so, the property of the company was exempt under its charter until March 28, 1877.

3. That by its acceptance of the eleventh section of the act of 1875 as an amendment to its charter, the company was exempt from any other taxation than that prescribed by that section, from January, 1875, until January, 1885.

The Supreme Court of the State decided, upon appeal, in respect to this company, that the acceptance of sect. 11 of the act of 1875 did not relieve the company from taxation under the first ten sections of the act of 1875, as amended in 1877, because that section was unconstitutional and void; that both the capital stock and the property of the company were, by the charter, exempt from all taxation until March 28, 1877; that after that date the property of the company was taxable under the act of 1875, as amended; and that, in settlement of the taxes to be levied for the years 1877 and 1878, the company was entitled to an allowance for the sums paid in 1876 and 1877, under that section.

Sect. 11 of the charter of the Mobile and Ohio Railroad Company provides as follows: —

"That the capital stock of said company shall be for ever exempt from taxation, and the road, with all its fixtures and appurtenances, including workshops, warehouses, and vehicles of transportation, shall be exempt from taxation for the period of twenty-five years from the completion of the road, and no tax shall ever be laid on said road or fixtures which will reduce dividends below eight per cent."

The road of this company was not completed until April 22, 1861, and the court below decided that both its capital stock and its tangible property were exempt from taxation until April 22, 1886, and as that relieved the company from taxation under the act of 1875, as amended, until after the year 1886, and the defendants in the suit were only proceeding to make an assessment for the years 1875, 1876, 1877, and 1878, an injunction was granted restraining the assessments until 1886, and leaving all questions after that time open.

The Knoxville and Charleston Railroad Company was incorporated Feb. 18, 1858.  Sect. 58 of its charter is as follows: —

" The said company is hereby invested, for the purpose of making and using said road, with all the powers, rights, and privileges, and subject to all the disabilities and restrictions, that have been conferred and imposed upon the Nashville and Chattanooga Railroad Company in its original charter."

The charter of the Nashville and Chattanooga Railroad Company contained all the usual and ordinary provisions found in railroad charters, authorizing the construction and use of railroads, and also contained an exemption from taxation like that in sect. 38 of the charter of the Memphis and Charleston Railroad Company.  The Knoxville and Charleston Company claimed exemption from taxation under the amended law of 1875, on account of the exemption clause in the charter of the Nashville and Chattanooga Company; but the court below held otherwise, on the ground that the exemption of the Nashville and Chattanooga Company was not one of the " rights and privileges " granted to the Knoxville and Charleston Company.

To reverse the judgment of the Supreme Court of Tennessee, the companies sued out this writ, and assign for error that the Supreme Court of Tennessee erred, —

1. In adjudging that the eleventh section of the act of March 20, 1875, the provisions of which had been accepted, and by its terms had become a part of the charter of the Memphis and Charleston Railroad, was unconstitutional and void, as being violative of the rule of equality and uniformity of taxation prescribed and required by par. 28, art. 2, of the Consti-

tution of 1870.    It furthermore erred in holding that the repealing act of March 20, 1877, was constitutional and valid, and not violative of the chartered rights of these several companies.

2. In decreeing that the roads of the companies, with their fixtures and appurtenances, including shops, warehouses, and vehicles of transportation, whether built and purchased by the capital stock or not, were, under said act of 1877, liable to taxation after the expiration of twenty years, and twenty-five years from the completion of the respective roads.

3. In decreeing that the Knoxville and Charleston Railroad Company was liable to taxation under the acts of 1875 and 1877, and was not entitled to any exemption.

4. In not decreeing that the Mobile and Ohio Railroad Company should never be subjected to any taxation which would reduce its dividends below eight per cent.

*Mr. W. Y. C. Humes* for the plaintiff in error.

According to the settled judicial construction as well as the popular import of " capital stock," the term, where it occurs in the charters of these companies, must be held to signify the property purchased therewith and represented thereby.    Such stock exists only nominally.    The property it represents is the tangible reality.    Burrough, Taxation, 142.    If the charters were silent on the subject, and the general laws of the State controlled, a tax could not be assessed upon the stock and upon such property, whether the latter consisted of real estate, rolling-stock, the road-bed, or the fixtures therewith connected, as double taxation would be thereby imposed.    It therefore necessarily follows that the perpetual exemption of the stock from taxation extends to such property.    *Gordon* v. *Baltimore,* 5 Gill (Md.), 236; *Baltimore* v. *Baltimore & Ohio Railroad Co.,* 6 id. 294; *State* v. *Cumberland & Pennsylvania Railroad,* 40 Md. 51; *Bedford* v. *Mayor of Nashville,* 7 Heisk. (Tenn.) 413; *Iron City Bank* v. *Pittsburg,* 37 Pa. St. 340; *Connersville* v. *Bank of Indiana,* 16 Ind. 105; *Sebring* v. *City of Charleston,* 5 Rich. (S. C.) Eq. 561; *State* v. *Hood,* 15 Rich. (S. C.) 178; *Ordinary of Bibb County* v. *Central Railroad et al.,* 40 Ga. 646; *Douglass* v. *State, &c.,* 34 N. J. L. 485; *State, &c.* v. *Haight,* id. 128; *Richmond* v. *Richmond & Danville Railroad Co.,* 21

Gratt. (Va.) 604; *Union Bank* v. *State*, 9 Yerg. (Tenn.) 489; *New Haven* v. *City Bank*, 31 Conn. 108; *Hannibal & St. Joseph Railroad Co.* v. *Shacklett*, 30 Mo. 550; *Wilmington Railroad* v. *Reid*, 13 Wall. 264.

To give full effect to the entire charter, the specifically enumerated property which is exempt but for a limited period must be confined to such as was purchased or constructed with money, not constituting a part of the fund, subscribed by the corporators, but borrowed pursuant to the power which the charter conferred upon the companies. Otherwise, we must ignore the cardinal rule of construction, which requires that the different provisions of a statute should, if possible, be reconciled, so as to make the whole consistent and harmonious. The court below rendered nugatory and unmeaning the positive and unequivocal provision in regard to the capital stock, by holding that the property which it represents was rightfully subject to taxation after the expiration of that period.

The capital stock of the Memphis and Charleston Railroad Company and of the Mobile and Ohio Railroad Company is $10,633,325. The bonded debt, secured by mortgages, which was incurred in procuring the means to complete the construction of their roads and to purchase other property appurtenant thereto, is $16,295,677.05. By giving to each clause its full meaning, the works and property of the respective companies to the latter amount would be taxable after that period; but so much of them as was paid for out of the capital stock would be perpetually exempt. Any other interpretation practically nullifies the first clause of the section, by depriving the capital stock of the immunity thereby conferred.

The Mobile and Ohio Railroad Company has also a further provision, relieving it from any taxation which " would reduce dividends below eight per cent." It has not for years declared dividends, and its condition will not justify it in doing so. The State claims the right, nevertheless, to subject the property to taxation. The cases in this court are conclusive against the right. *Raleigh & Gaston Railroad Co.* v. *Reid*, 13 Wall. 269; *Pacific Railroad Co.* v. *Maguire*, 20 id. 36.

The act of 1877 is a palpable violation of the contract contained in these charters, and no question is made by the

defendants as to the power of the legislature to grant them under the Constitution of 1834.

It remains to consider the effect of the eleventh section of the act of March 20, 1875. The Memphis and Charleston Railroad Company, by accepting it, entered with the State into a contract, which is binding, unless it infringes some constitutional limitation upon the legislative power.

It is submitted —

1. That the charter of the company, with all the exemptions thereby conferred, was in full force when the Constitution of 1870 took effect.

2. By the section, the State purchased from the company its surrender of the exemptions, and thus secured an immediate annual revenue of one and one-half per cent upon its gross earnings, by stipulating that that percentage should be the measure of taxation for the ensuing ten years.

3. An adequate consideration having been thus paid, the case falls within the rule announced in *State Bank of Ohio* v. *Knoop*, 16 How. 169.

4. The constitutional provision respecting equality and uniformity of taxation does not apply to property wholly exempt from taxation, as this confessedly was, then and for years afterward. Even if no such exemption existed, the legislature could, under the existing Constitution, make a valid contract with the company for a fixed percentage on its gross earnings, in commutation for all taxes on its property for a specific period. Burrough, Taxation, 137; *Illinois Central Railroad Co.* v. *McLean County*, 17 Ill. 291; *Hansacker* v. *Wright*, 30 id. 148; *State Bank* v. *People*, 5 id. 303; *People* v. *Berger*, 62 id. 452; *Supervisors* v. *Campbell*, 42 id. 490; *Louisiana State Lottery* v. *City of New Orleans*, 24 La. Ann. 86; *Louisville & Nashville Railroad Co.* v. *Tennessee*, 8 Heisk. (Tenn.) 798.

5. The Supreme Court declared the section to be unconstitutional, after the company had in good faith accepted its terms, and paid for two years the stipulated consideration. The company claims that its acceptance created a contract, the obligation of which was impaired by subsequent legislation. A Federal question thus arises; and, in determining the points

which it involves, this court is not, in regard to any of them, bound by the decision of the State court.

If, however, the section is held to be not authorized by the Constitution of 1870, the question as to the exemption under the original charters will remain.

The Knoxville and Charleston Railroad Company had, for the purpose of making and using her road, all the rights and privileges granted to the Nashville and Chattanooga Railroad. Company by its original charter, which provided for an exemption of its capital stock for ever, and of its road and property for twenty years from the completion of the road. The road is not yet completed. *Humphrey* v. *Pegues* (16 Wall. 244) is almost identical with this case. It was there held that the grant of the rights and privileges to one company which were possessed by another carried with it the exemption from taxation which the latter enjoyed. So in *Morgan* v. *Louisiana* (93 U. S. 217), Mr. Justice Field says, " Immunity of particular property from taxation is a privilege which may sometimes be transferred under that designation, as held in *Humphrey* v. *Pegues*, 16 Wall. 244. All that we now decide is, that such immunity is not itself a franchise of a railroad corporation, which passes as such, without other description, to a purchaser of its property." p. 224. The only question then under consideration was, whether by a sale of the property and franchises of a railroad company under a decree of foreclosure, or under an execution sued out upon a money judgment rendered against it, an immunity from taxation conferred by the charter would accompany the property when transferred to the purchaser. The court decided that it would not, as it was a " personal privilege of the company, and not transferable." The soundness of the rule in *Humphrey* v. *Pegues*, as to what passes when the " rights and privileges " which one company possesses are granted to another by a legislative enactment, was not doubted, nor has it been in any subsequent case.

Lexicographers define " privilege " to be an exemption or immunity from some general burden ; a peculiar advantage or benefit. The right and privilege to " make and use " a railroad free from taxation, vested in the Nashville and Chatta-

nooga Company, were granted to the Knoxville and Charleston Company.

*Mr. J. B. Heiskell, contra.*

MR. CHIEF JUSTICE WAITE, after stating the case, delivered the opinion of the court.

The claims of the several corporations will be considered separately, and in the order they are presented by the record.

### I. THE MEMPHIS AND CHARLESTON RAILROAD COMPANY.

1. As to the extent of the exemption contained in the original charter.

Under this branch of the case the company claims that the exemption of the capital stock from taxation is equivalent to an exemption of the property purchased with or represented by the capital, and there are undoubtedly many cases to be found in this and other courts where it has been held that an exemption of the capital stock of a corporation from taxation was equivalent to an exemption of the property into which the capital had been converted. But in all these cases we think it will be found that the question turned upon the effect to be given the term "capital," or "capital stock," as used in the particular charter under consideration, and that when the property has been exempted by reason of the exemption of the capital, it has been because, taking the whole charter together, it was apparent that the legislature so intended. Thus the capital stock of a bank usually consists of money paid in to be used in banking, and an exemption of such capital stock from taxation must almost necessarily mean an exemption of the securities into which the money has been converted in the regular course of a banking business. And in general, an exemption of capital stock, without more, may, with great propriety, be considered, under ordinary circumstances, as exempting that which, in the legitimate operations of the corporation, comes to represent the capital.

But in this case, while the capital stock is for ever exempt, the "road, with all its fixtures and appurtenances, including workshops, warehouses, and vehicles of transportation," is

exempt for only twenty years after the completion of the road. Clearly, under such circumstances, it could not have been understood that the enumerated property was to represent the capital for the purposes of taxation. Exemptions are never to be presumed. On the contrary, the presumptions are always against them. The exemption of the property for twenty years only is equivalent to an express power to tax after that time.

It is said, however, that both provisions of the statute can stand, — that which exempts the capital and that which taxes the tangible property, — if the part of the property which represents the capital is exempted, and that which represents the bonded debt is taxed; but we certainly have no clear mani-festation of any such intention by the legislature. It is as distinctly stated that the road and *all* its fixtures, &c., are to be taxed as that the capital is to be exempt. While the company had power to borrow money on mortgage, it is very clear from the provisions of the charter it was expected the road might be completed with capital alone. Sect. 17, in which the power to mortgage is given, is as follows: "The said company may at any time increase its capital stock to a sum sufficient to complete the road and stock it with every thing necessary to give it full operation and effect, either by opening books for new stock, or by selling such new stock, or by bor-rowing money on the credit of the company and on mortgage of its charter and works; and the manner in which the same shall be done, in either case, shall be prescribed by the stock-holders at a general meeting. . . ." Under these circumstances, it cannot for a moment be doubted that if the legislature had supposed a different rule of taxation was to be applied if the road was built with borrowed money, from what should be if it was built from stock, some mention would have been made of it, and some means provided for determining what was exempt as representing stock, and what taxable as representing debt. Then again, suppose the debt paid off, either by the issue of new stock or the earnings of the road, would the property then be exempt as capital, or taxable because originally built with borrowed money?

Without pursuing this subject further, it is sufficient to say

that we are clearly of the opinion that the road, with all its fixtures, &c., was taxable under the original charter after March 28, 1877, and that, whatever else was exempted as capital stock, this was not.

2. As to the éffect of the acceptance of the eleventh section of the act of 1875, and the payment of taxes thereunder for the years 1875 and 1876.

The claim on the part of the company is, that by the acceptance of this section as an amendment to its charter, a valid contract was entered into between the State and the corporation, regulating the taxation of the company until the year 1885. It is said that the release by the company of the perpetual exemption of its capital stock, and of the exemption of its property until 1877, which were granted by the original charter, was a sufficient consideration for an agreement, on the part of the State, not to tax the company otherwise than according to the accepted eleventh section for ten years, and that a law which provides for taxation in a different manner impairs the obligation of that contract.

The decision of the Supreme Court of the State declaring this section to be invalid, so far as it relates to companies not claiming to be exempt from taxation under their charters, because it does not conform to the constitutional requirement of uniformity, is binding upon us as a construction of a State statute by the highest court of the State. While we are not bound by the decision in the present case, that the section is also invalid as to this company after the expiration of the time to which the exemption of its property was limited by its charter (*Jefferson Branch Bank* v. *Skelly*, 1 Black, 436; *Bridge Proprietors* v. *Hoboken Company*, 1 Wall. 116), the decision ought not to be overruled, unless it is clearly wrong. The delicate power· which we have, under the Constitution of the United States, over the judgments of the State courts, ought always to be used with the greatest caution. There should be no reversal of such judgments, unless the error is manifest.

The Constitution of Tennessee adopted in 1870 requires that all property shall be taxed. After that Constitution went into effect, no valid contract could be made with a corporation for an exemption from taxation. So the courts of Tennessee have

held, and in so doing have established a rule of decision for us. The property of this company was only exempt by its charter until March 28, 1877. The Constitution did not and could not interfere with this exemption so long as it lasted. This the Supreme Court of the State decided. To that extent the claim of the company was sustained.

If nothing had been done until the charter exemption expired, it is clear that, under the construction which the courts of the State have given the Constitution, no contract for the taxation of the company according to the provisions of the eleventh section of the act of 1875 could have been sustained. The only question, therefore, which remains, is, whether in 1875 the legislature could contract for the surrender of the remaining charter exemptions by binding the State not to tax the company for ten years in any other manner than that provided for in sect. 11.

The Constitution has subjected all property in the State to the burden of uniform taxation according to its value. · So the courts of the State have decided. The legislature has no power to contract for relief from this burden. It could not do it for a money consideration, and if not for that, clearly not for any other. This is one of the disabilities under which the people of the State have placed their government. But for it taxes might have been commuted or they might have been withheld.

There is no doubt of the power of the legislature to contract with the company for a surrender of its charter exemptions in a way that did not involve a release from the constitutional mode of taxation after the charter exemption had expired. Such a release is, however, as we think, prohibited by the Constitution, as construed by the highest judicial authority in the State.

This disposes of the case so far as the Memphis and Charleston company is concerned. It is not contended that the act of 1875, as amended in 1877, transcends the power of taxation allowed by the charter after the exemption of the road and its appurtenances has expired, unless they are protected by the exemption of the capital stock. The Supreme Court of the State enjoined all taxation prior to March 28, 1877, and decreed

that the money paid under the provisions of the eleventh section of the act of 1875 should be allowed as a credit upon the taxes of 1877 and 1878, and the excess, if any, refunded with interest. This, as we think, is all the company can require.

### II. THE MOBILE AND OHIO RAILROAD COMPANY.

As to this company, the court decided that it was exempt from taxation under its charter until April 22, 1886, and enjoined the assessment and collection of taxes under the laws of 1875 and 1877 until that date. The further provision of the charter in respect to taxation so as to reduce dividends below eight per cent was not passed upon below, and was not involved in the decision as made. For this reason it cannot be considered by us.

### III. THE KNOXVILLE AND CHARLESTON RAILROAD COMPANY.

The court below decided that this company did not by its charter become entitled to the privilege of exemption from taxation, which was granted to the Nashville and Chattanooga Company. If this be so, then the judgment was clearly right, and no other question need be considered.

The Knoxville and Charleston Company, for the purpose of making and using its road, was invested with all the powers, rights, and privileges of the Nashville and Chattanooga Company.

In *Humphrey* v. *Pegues* (16 Wall. 244), we held that the grant to one company of " all the powers, rights, and privileges " of another, carried with it an exemption from taxation; but in *Morgan* v. *Louisiana* (93 U. S. 217), that such an exemption did not pass by sale of the franchises of a railroad company. In the last case, Mr. Justice Field, speaking for the court, said, " The franchises of a railroad corporation are rights or privileges which are essential to the operations of the corporation, and without which its road and works would be of little value ; such as the franchise to run cars, to take tolls, to appropriate earth and gravel for the bed of its road, or water for its engines, and the like. They are positive rights and privileges, without

the possession of which the road of the company could not be successfully worked. Immunity from taxation is not one of them."

This seems to us conclusive of the present case. The grant here was not of all the rights and privileges of the Nashville and Chattanooga Company, but of such as were necessary for the purpose of making and using the road, or, in other words, the franchises of the company which do not include immunity from taxation.

On the whole, we find no error in the record.

*Judgment affirmed.*