### RAILWAY COMPANY *v.* LOFTIN.

1. The act of the General Assembly of Arkansas of Jan. 12, 1853, incorporating the Cairo and Fulton Railroad Company, and exempting for ever its capital stock and dividends from taxation, does not so exempt the lands granted by the act of Feb. 9, 1853 (10 Stat. 155), to that State, and by her transferred to the company.

2. The lands, although granted by Congress to aid in constructing the road and used in lieu of capital, to that extent relieving the company from the necessity of raising money through stock subscriptions, do not represent the stock within the meaning of the act of incorporation.

3. *Railroad Companies* v. *Gaines* (97 U. S. 697) cited and approved.

ERROR to the Supreme Court of the State of Arkansas.

The Cairo and Fulton Railroad Company was incorporated by the General Assembly of the State of Arkansas, Jan. 12, 1853, to construct a railroad from the Mississippi River opposite the mouth of the Ohio, in Missouri, by way of Little Rock, Ark., to the Texas State line. The capital stock was fixed at $1,500,000, with power of increase, divided into shares of $25 each, to be held as personal property. The board of directors named in the act were authorized to open books of subscription to the stock, and the directors for the time being had power to require the payment of the sums subscribed in such manner and on such terms as they deemed proper. Sects. 11 and 13 are as follows : —

"SECT. 11. That the capital stock and dividends of said company shall be for ever exempt from taxation. The road, fixtures, and appurtenances shall be exempt from taxation until after it pays an interest of not less than ten per cent per annum."

"SECT. 13. This act shall be deemed a public act, and shall be favorably construed for all purposes therein expressed, and declared in all courts and places whatsoever, and shall be in force from and after its passage : *Provided*, that all the rights, privileges, immunities, and franchises contained in the charter, granted at this session of the legislature of this State to 'The Mississippi Valley Railroad Company,' and not restricting or inconsistent with this act, are hereby extended to, and shall form a part of, this incorporation as fully as if the same was inserted herein." Acts of 1853–54, p. 176.

Sect. 25 of the act to incorporate the Mississippi Valley Company is as follows : —

"SECT. 25. That the capital stock of said company, with all the immunities and franchises herein specified, and all machines, cars, engines, or carriages belonging to said company, together with all their works and property, and all profits which shall arise from the same, shall be vested in the respective stockholders of the company for ever, in proportion to their respective shares ; and the capital stock of said company and the dividends shall be exempted from taxation until a dividend of six per cent is realized upon the capital stock ; and the road, with all its fixtures and appurtenances, including workshops, warehouses, and vehicles of transportation, shall be exempted from taxation for the period of twenty-five years from the

completion of the road, and no tax shall ever be levied on said road or its fixtures which will reduce the dividends below ten per cent per annum. Said stockholders shall not be bound or liable for any greater amount than the respective shares of stock which they or either of them own." Acts 1853–54, p. 181.

On the 9th of February, 1853, Congress made a grant of lands to the State of Arkansas to aid in the construction of the Cairo and Fulton road (10 Stat. 155, 156), and on the 16th of January, 1855, the State transferred the grant to the corporation. Sect. 2 of the statute of the State making this transfer is as follows : —

" SECT. 2. That after the expiration of twenty years from the date of the completion of the said Cairo and Fulton railroad from the Missouri line to the Texas boundary line to the point where said road shall cross Red River, near Fulton, said company shall pay into the State treasury an annual tax upon the road, fixtures, lands, tenements, and houses equal to that paid upon other taxable property in this State, for the time being, and for the purposes of taxation the road, fixtures, lands, tenements, and houses shall be considered separate and distinct from the capital stock, whether all the capital stock shall be expended in building said road, fixtures, houses, tenements, or not, and the capital stock shall be exempt from taxation, as provided for in the eleventh section of said Cairo and Fulton railroad charter, approved the 12th of January, 1853." Acts 1854–55, p. 150.

This act was amended Nov. 26, 1856, and this particular provision repealed, but sect. 9 of the amended act is as follows : —

" SECT. 9. That after said Cairo and Fulton railroad shall have been completed, and shall have declared a dividend of ten per cent per annum upon the capital stock of said company, then, and in that event, said Cairo and Fulton Railroad Company shall pay into the State treasury two and one-half per cent upon their net proceeds annually." Acts 1856–57, p. 7.

The road was not completed until Jan. 15, 1874, and no dividend has ever been declared upon the stock of the company. The total quantity of lands included in the grant was about 1,400,000 acres. Only about $300,000 of capital stock.

was ever paid in, and the road, which cost about $11,000,000, was built with money borrowed upon bonds and otherwise.

On the 8th of April, 1869, the General Assembly passed an act requiring each railroad company in the State, on or before the first day of January in each year, to furnish the auditor of public accounts a full list of all lands acquired by grant, donation, or subscription in aid of the construction of its road, but provided that such lands should not be listed or subject to taxation until conveyed to actual purchasers. Acts of 1868–69, p. 131. The Cairo and Fulton company made its returns in accordance with the requirements of this act. On the 30th of November, 1875, another act was passed, as follows : —

"SECT. 1. That the assessor in the different counties of this State shall, at the time he assesses the personal property in his county, in the year one thousand eight hundred and seventy-five, assess and place on the tax-book of his county, under the same rule and restrictions as is required in assessing lands in this State, all the lands in his county heretofore donated, granted, or given to any railroad or railroad corporation, when the title to the lands has passed from the United States government, and such lands shall thereafter be assessed and taxed as other lands in this State.

"SECT. 2. That all laws and parts of laws in conflict with this act be and the same are hereby repealed, and this act take effect and be in force from and after its passage." Acts 1875–76, p. 29.

The Cairo and Fulton company has been consolidated, pursuant to laws of Arkansas and Missouri, with the St. Louis and Iron Mountain Railroad Company, under the name of the St. Louis, Iron Mountain, and Southern Railway Company, the plaintiff in this action. The lands granted to the Cairo and Fulton company passed by the consolidation to the consolidated company.

The unsold lands were assessed for taxation under the law of 1875, and the consolidated company filed its bill in equity in the State court against Loftin, the collector of Jackson County, to restrain the collection, on the ground that the act under which the assessment was made impaired the obligation of the contract of exemption contained in the charter of the Cairo and Fulton company. The Supreme Court of the State, upon appeal, decided otherwise, and affirmed the decree of the

court below, dismissing the bill.    To reverse this decree of
the Supreme Court, the present writ of error has been brought.

*Mr. U. M. Rose* for the plaintiff in error.

The capital stock represents the property of the company,
whatever that may be.    *Baltimore* v. *Baltimore & Ohio Rail-
road Co.*, 6 Gill. (Md.), 294; *Rome Railroad Co.* v. *Mayor,*
14 Ga. 275; *Augusta* v. *Georgia Railroad Co.*, 26 id. 661; *New
Haven* v. *City Bank*, 31 Conn. 108; *Hannibal & St. Joseph
Railroad Co.* v. *Shacklett*, 30 Mo. 550; *Richmond* v. *Richmond
& Danville Railroad Co.*, 21 Gratt. (Va.) 604; *State Bank* v.
*Brackenridge*, 7 Blackf. (Ind.) 395; *Osborne* v. *New York
Railroad Co.*, 40 Conn. 491; *State* v. *Haight*, 34 N. J. L. 319;
*Farrington* v. *Tennessee*, 95 U. S. 679.

The lands being a part of the capital stock, were therefore,
under the charter, exempt from taxation.

*Mr. A. H. Garland, contra.*

MR. CHIEF JUSTICE WAITE, after stating the facts, deliv-
ered the opinion of the court.

The principal question in this case is whether the eleventh
section of the charter of the Cairo and Fulton Railroad Com-
pany, which exempts for ever from taxation the capital stock
and dividends of the company, carries with it an exemption of
the lands in question so long as they remain unsold.    We had
occasion at the present term, in *Railroad Companies* v. *Gaines*
(97 U. S. 697), to construe an exemption clause in a railroad
charter almost in the exact language of that now under consid-
eration; and while conceding that ordinarily an exemption of
the capital stock is equivalent to an exemption of the property
into which the capital has been converted, unless a contrary
intention is in some way manifested, we held that as the rail-
road, with its fixtures and appurtenances, was only exempted
from taxation for twenty years, and the capital stock was ex-
empted for ever, it was clear that the road and fixtures could
not represent the capital for the purposes of taxation.    The
twenty-fifth section of the Mississippi Valley charter, even if
it was incorporated with that of the Cairo and Fulton company,
of which there may be doubt, does not materially change the
effect of the eleventh section.    It vests the capital stock and

property of the company in the stockholders in proportion to their respective shares, but that is far from making the stock and the property identical for the purposes of taxation. Indeed, taking the whole section together, it is apparent that there was in the case of that company the same intention to separate the taxation of the stock from that of the property as is found in the Cairo and Fulton charter.

But when the land grant was made, the intention not to include the lands granted in the exemption of the stock is still more manifest; for it is there expressly provided that the " road, fixtures, lands, tenements, and houses shall be considered separate and distinct from the capital stock," and while the original exemption of stock was continued, the lands, &c., were to be taxed after twenty years from the date of the completion of the road. It is quite true that this provision of the granting act was afterwards repealed, and a different mode of taxation adopted; but there is nowhere in the repealing act any intention shown of converting the lands into capital stock, and without some express declaration to that effect, no such conversion will be presumed. The lands were used in lieu of capital. They were given in aid of the construction of the road, and to that extent relieved the company from the necessity of raising money through stock subscriptions; but it would be unreasonable to hold that, because they rendered stock to some extent unnecessary, they were on that account stock itself. Exemptions from taxation are never presumed. On the contrary, the presumptions are always the other way; and as in this case the capital stock is alone exempt, the property of the company is not to be included in the exemption, unless it manifestly represents the stock, within the meaning of that term as used by the legislature in the particular act to be construed. As we said in *Railroad Companies* v. *Gaines* (*supra*), whenever property is exempted by reason of the exemption of capital stock, it is because, taking the whole charter together, such appears to have been the intention of the legislature.

On the whole, we are clearly of the opinion that the lands in question are not included in the exemptions of the original charter. None of the other statutes set out in the bill amount to a limitation of the power of future legislatures in respect to

the taxation of the property. They are in no sense contracts, and are not, therefore, irrepealable. *Tucker* v. *Ferguson*, 22 Wall. 527.

*Judgment affirmed.*