### State of Tennessee *v.* Whitworth, Trustee, etc.

*(Circuit Court, M. D. Tennessee.* 1884.)

1. TAXATION—CHARTER EXEMPTION OF CAPITAL STOCK OF RAILROAD—EXEMPTION OF INDIVIDUAL INTERESTS OF STOCKHOLDERS—OBLIGATION OF CONTRACT.
   The perpetual exemption of the capital stock of a railroad corporation from taxation, by the provisions of its charter, covers the individual interest therein of the stockholders; and a subsequent law imposing a tax on the shares owned by them impairs the obligation of the contract between them and the state, and is unconstitutional and void.

2. SAME—POWER OF LEGISLATURE.
   The legislature of a state may distinguish between the interest of a corporate body in its capital or capital stock and that of the individual shareholder as separate subjects of taxation; so that one may be taxed and the other exempt, or both governed by the same rule of taxation or exemption, at its discretion.

3. SAME—NASHVILLE, CHATTANOOGA & ST. LOUIS RAILWAY COMPANY.
   The Nashville, Chattanooga & St. Louis Railway Company having succeeded to all the rights and franchises of the Nashville & Chattanooga Railway Company and the Nashville & Northwestern Railway Company, the shareholders

of the new company are entitled to exemption from taxation under the provisions in the charters of the old companies that "the capital stock * * * shall be forever exempt from taxation;" and the act of March 1, 1869, passed by the legislature of Tennessee, taxing such shares, violates the obligation of contract and is void.

*Mandamus.*

MATTHEWS, Justice. This proceeding in *mandamus* was commenced by the state of Tennessee, on its own behalf, and upon the relation of Davidson county and the city of Nashville, in the circuit court of that county, to compel the defendant, trustee of said county, to assess for taxation, in favor of the state, county, and city, the shares of stock owned by individual shareholders in the Nashville, Chattanooga & St. Louis Railway Company. The alleged duty required of the defendant, is imposed by statute of the state,—an act of March 12, 1879, as amended by an act of March 28, 1883,—whereby all collectors of taxes, the defendant as trustee being one, are made "assessors to assess all property which, by mistake of law or fact, has not been assessed, whether the omission be for the particular year or years; and it is hereby made the duty of such collectors in all cases, where property has not been assessed, but on which taxes ought to be paid by law, to immediately assess the same, and proceed to collect the taxes."

The property sought now to be subjected to assessment for taxation, it is claimed, is within the purview of the act of March 1, 1869, which has been carried forward into every revenue act since passed, and is still in force, as follows:

"No tax shall hereafter be assessed upon the capital of any bank or banking association, or other joint-stock company, organized under the authority of this state or of the United States; but the stockholders in such banks and banking associations, or other corporations, shall be assessed and taxed upon the value of their shares and stock therein. Said shares shall be included in the valuation of the personal property of such stockholders in the assessment of state, county, or municipal taxes at the place, town or ward, or district where such bank, banking association, or other corporation is located, and not elsewhere, whether the said stockholder reside in said place, town, ward, or district, or not, but not at a greater rate than is assessed upon the moneyed capital in the hands of individuals in the state; and provided, further, that nothing herein contained shall be held or construed to exempt from taxation the real estate held or owned by such bank or banking association, or other corporation; but the same shall be subject to state, county, municipal, and other taxation, and in the same manner as other real estate is taxed."

It was decided by the supreme court of Tennessee that this section included the case of taxing the shares of stock in a gas-light company, upon such grounds as also to embrace the case of taxing shares of stock in railroad companies. *Bedford* v. *Mayor of Nashville*, 7 Heisk. 409. The act of 1869 makes the tax a lien on the shares of stock subject to assessment, authorizes the collection of the tax from the avails of their sale, and makes it the duty of the corporation to retain all dividends belonging to such stockholder so far as necessary

to pay the taxes assessed upon his shares. There is much in the statute that seems inappropriate to the case of corporations other than banks and similar associations, where capital is employed in the form of money and securities; but, in view of the decision of the supreme court of the state, already referred to, no question is raised on the point. The case originally instituted in a state court was removed to this court on the ground that its decision necessarily involved a question arising under the constitution of the United States, it being claimed on the part of the defendant that the shares of stock sought to be subjected to assessment for taxation were exempt by a contract with the state contained in the charter of the Nashville, Chattanooga & St. Louis Railroad Company. It is now claimed on behalf of the state that it has the right to have the shares of stock in this corporation assessed for taxes by the tax collector of Davidson county, where it has its principal place of business, as the property of the holders at the time of the filing of the petition, for as many years as the books of the corporation show the stock to have been continuously owned by them since the passage of the act of 1869; and that these taxes, when assessed, become a lien upon the stock, for the payment of which the corporation itself is responsible to the extent of any dividends declared or settlements had by it with the shareholders since the filing of the petition; but when the stock has changed hands during years for which it was liable for taxation, it is not insisted that it is now to be assessed for such omitted taxes, so as to hold either the stock or the present owner liable therefor, nor that the assessment can go back prior to the year 1875, at which time, as appears by the answer, the old stock was surrendered, and the present stock created and issued.

The act to incorporate the Nashville & Chattanooga Railroad Company was passed on December 11, 1845. The thirty-eighth section of that act is as follows:

"The capital stock of said company shall be forever exempt from taxation, and the road, with all its fixtures and appurtenances, including work-shops, warehouses, and vehicles of transportation, shall be exempt from taxation for the period of twenty years from the completion of the road, and no longer."

A provision in the same language was contained in the charter of the Nashville & Northwestern Railroad Company; all of whose property and road, including all its rights and franchises, and the foregoing exemption, it is admitted, passed by a judicial sale to the Nashville & Chattanooga Railroad Company. The name of the latter was changed to the Nashville, Chattanooga & St. Louis Railway Company, and to enable it to pay for this and other roads acquired by it, this company was authorized to increase its capital stock to the present amount of $6,670,331.20, divided into shares of $25 each. It is claimed for the defendant in this proceeding that the perpetual exemption of the capital stock of the company from taxation covers the individual interest therein of the stockholders, the attempted violation of which is repugnant to that clause of the constitution of the

United States which forbids the states from passing laws impairing the obligation of contracts.

The issue presented is one of the construction of the clause of the charter quoted above; the question being, what is the legislative intent embodied in the language of that exemption? It must be admitted at the outset that it was competent for the legislature of the state to distinguish between the interest of a corporate body in its capital or capital stock and that of the individual shareholder, as separate subjects of taxation; so that one may be taxed and the other exempt, or both governed by the same rule of taxation or exemption, at the discretion of the legislature. It was accordingly held by the supreme court of Tennessee, in the case of *Union Bank* v. *State*, 9 Yerg. 490, that a provision in the charter of a bank, "that in consideration of the privileges granted by the charter the bank agrees to pay to the state annually one-half of one per cent. on the amount of the capital stock paid in by the stockholders other than the state," operated by way of contract to restrict the state in taxing the corporation in respect of its capital stock to the rate mentioned, but not to prohibit the state from a separate and additional taxation of each stockholder upon his individual interest as a stockholder. In that case it will be observed, however, that the language of the charter did not exempt from taxation, in whole or in part, the capital stock of the company as a subject of taxation, without regard to its ownership, but was an agreement directly and expressly with the corporation itself, as distinct from its shareholders, as to a tax to be paid by the corporate body, measured by a rate upon the amount of its capital stock paid in. An exemption was thereby implied as extended to the corporation not to tax it on that account at any greater rate; but that exemption, it was held, could not be judicially extended so as to embrace the case of individual stockholders chargeable in respect to their separate interests as such.

In that respect that case differs from the present, for here the exemption is not of a person, but of a thing; it is not that no tax shall be required of the corporation in respect to its capital stock, but that the capital stock itself shall be forever exempt from taxation,—that is, shall not be regarded as a lawful basis or subject of taxation,—thus removing the thing itself from the list of taxables under any authority deriving its powers from the state. This exemption is not limited to the interest of the corporation in its capital stock by calling it "the capital stock of the company," as though this was intended to convey the idea of property and ownership in the company of its stock. It is the capital stock of the company, not as belonging to the corporation as property, but merely as designating and describing it as the capital stock authorized by that act, and to be known as the capital stock of the particular company by the name it bears.

Nor can the exemption be limited by the idea that the clause is in a contract between the state and the corporation as such, and not

with the natural persons composing it as stockholders. That supposition, in the first place, is not accurate. The contract of the charter is with all who become parties to it by accepting its proposals, as all do, who subscribe to the capital stock it authorizes upon the terms and conditions expressed and implied. But even were it, as claimed, technically a contract between the state and the corporate body only, yet that would not change the meaning of the clause in question, which does not refer to persons, but operates distinctly upon the very things it describes. But that the stockholders are the real parties to the contract appears not less from the whole purview of the statute as from the particular provisions of the thirty-fourth section relating to amendments to the charter, which, it is provided, when accepted and adopted unanimously by the president and directors, "shall be obligatory on the stockholders, and not otherwise."

A clause of exemption in a railroad charter, identical with that under discussion here, was considered and construed by the supreme court of the United States in the case of *Railroad Cos.* v. *Gaines,* 97 U. S. 697. It was there contended on the part of the railroad company that the capital stock of the company exempted not only was the capital which belonged to the corporation, but consisted of the very property into which the original capital contributed by individual subscribers had been converted by investment, and so embraced that much, at least, of the road, fixtures, etc., which represented subscribed capital as distinct from borrowed capital, although it was, by the express words of the clause, to be exempt from taxation only for 20 years from the completion of the road. But this view was not adopted, the court holding that the property expressed to be exempted for 20 years only could not be a part of that which was exempted forever. It follows, therefore, necessarily, that the capital stock of the company, which is not subject to taxation, is a distinct thing altogether from any part of the property belonging to the company, whether exempt from taxation for a limited period or not at all. It does not include the franchises of the company to be a corporation, or to make and operate a railroad; for, in the first place, the phrase is not an appropriate one to convey such a meaning; and, in the next, the value of the franchises of the company necessarily is included in the value of the property of the company used for corporate purposes, as that use cannot be separated from the property used, in any rational estimate of the value.

What, then, remains of possible subjects to which the exemption may be applied? For we are not at liberty to suppose the exemption has nothing on which it can take effect, and is therefore void and without meaning. It is suggested in argument, as an alternative meaning, that the exemption is a stipulation merely that the corporation shall not be taxed upon the money paid in, or capital stock, at its full nominal value, but, as an encouragement to investment, only upon the property acquired by the company, at its value as ascertained

from time to time, as other similar property may be valued for purposes of taxation, and not upon that until after the lapse of 20 years. But that assumes that the object of the exemption is the corporation, whereas the thing exempted is the capital stock itself; and the natural reading of it is that, as to the capital employed by the company for corporate purposes, in the form of its road and fixtures, etc., that shall be exempt for 20 years; and as to the capital stock itself, held and owned by individual subscribers, who have incurred the risk of the investment, and depend on the success of the enterprise for the return of profits, it shall be forever exempt from taxation.

This conclusion seems to be required by the decision of the supreme court of the United States in the case of *Farrington* v. *Tennessee,* 95 U. S. 679. In that case, the bank charter provided that the bank "shall pay to the state an annual tax of one-half of one per cent. on each share of the capital stock subscribed, which shall be in lieu of all other taxes." It was held that the words "in lieu of all other taxes," as thus used, meant, in lieu of all other taxes that might be imposed on that subject of taxation, viz., the shares of the capital stock; and that, accordingly, it excluded a tax on those shares assessed upon them against the individual shareholder as his property. Mr. Justice SWAYNE, delivering the opinion of the court, said:

"There is no question before us as to the tax imposed on the shares by the charter, but the state has, by her revenue laws, imposed another and an additional tax on these same shares. This is one of those 'other taxes,' which it had stipulated to forego. The identity of the thing doubly taxed is not affected by the fact that in one case the tax is to be paid vicariously by the bank, and in the other by the owner of the share himself. The thing thus taxed is still the same, and the second tax is expressly forbidden by the contract of the parties. After the most careful consideration we can come to no other conclusion. Such, we think, must have been the understanding and intent of the parties when the charter was granted and the bank organized. Any other view would ignore the covenant that the tax specified should be in 'lieu of all other taxes;' it would blot those terms from the context, and construe it as if they were not a part of it."

The present case is even stronger than that for the application of the exemption, for in the case cited the tax imposed was upon the corporation itself, and to be paid by it. And it might well have been argued with plausibility, as in fact it was, that it was to be in lieu only of all other taxes sought, in respect thereof, to be charged against the corporation, leaving the interest of the individual shareholders unaffected by the stipulation. But here no such consideration applies, for here the exemption is absolute, not in favor of any particular person, but without discrimination and without condition, operating upon the thing itself, known as capital stock of the company, however owned or held, and inhering in it forever. It is true, the word "shares" is not used; and it may be said that the reference is to the aggregate fund paid in and originally transferred to the

company; but there is no such actual aggregate fund remaining un-invested, and we have seen that it does not possibly include the property of the company resulting from its investment. The capital stock of the company, therefore, has no legal existence, except as an aggregate of the shares owned and held as individual property by the separate stockholders. Each share is a part of the whole, and, as the whole is exempt from taxation, it follows that each part or share must also be exempt.

This conclusion is strongly re-enforced by the phraseology of other parts of the statute, in instances too numerous to specify; more strongly still by a practical construction of this charter and the revenue acts of the state during the whole period of their co-existence, which has never drawn in question the exemption claimed for the stockholders of this corporation until the filing of the present petition.

Judgment will be rendered for the defendant, dismissing the petition.