## No. 8708.

THE CITY OF NEW ORLEANS VS. THE NEW ORLEANS SUGAR SHED COMPANY.

The City of New Orleans has no authority to exempt property from taxation or to agree to a commutation.

The stipulation in a contract that a bonus of a certain proportion of gross profits realized shall be paid to the City, provided the property yielding the revenue from which the same are derived shall be exempt from municipal taxation during the existence of the privilege granted, is in violation of the Constitution and must be considered as not made. The nullity of such stipulation renders void the agreement which depends upon it.

The City cannot claim both. It can claim the taxes only and is entitled to the privilege allowed by law. Where the bonus has not been paid as taxes and has been appropriated to purposes other than those to which taxes must be devoted, the taxes cannot be considered as satisfied by the payment of the bonus. Taxes are not compensable. The party who has paid the bonus is entitled to recover as an ordinary creditor only.

APPEAL from the Civil District Court for the Parish of Orleans. Monroe, J.

J. Ward Gurley, Jr., Assistant City Attorney, for Plaintiff and Appellant:

All exemptions from, and commutations of taxes on property not "actually used for church, school, or charitable purposes," are illegal, null and void. Art. 118, Constitution of 1868; 28 An. 498 and 756; 31 An. 447.

The ten per cent. bonus stipulated in Ord. 1528, N. S., to be paid by the defendant Company to the City, is "as a consideration for said privilege," the franchise, and not in lieu of taxation. The proviso, attempting to give an exemption, was and is an absolutely illegal addition. It formed no part of the consideration on either side, and can have no possible effect. Third subdivision of Sec. 2 of Ord. 1528, N. S.

Blanc & Butler for Defendant and Appellee:

The State has power, notwithstanding the uniformity and equality clause in her fundamental law, to commute taxation; and power to commute has been bestowed by the State of Louisiana upon the City of New Orleans. 29 Wis. 116; 17 Ill. 291; 21 N. J. 557; 31 Ala. 91; 30 Ind. 146; 1 Gill. 302; 21 Wall. 456; 10 Wisconsin, 243, 263; 9 Wall. 55; 24 An. 86; 11 An. 733.

The opinion of the Court was delivered by

BERMUDEZ, C. J.   The object of this suit is to recover from the defendant $2,700, as a tax on its merchandise, capital and money at interest, assessed at $60,000, and on other property consisting in sheds built on the public spaces in the levee in the Second District of the City and known as the sugar landing, assessed at $120,000.

Numerous defenses were interposed, most of which were abandoned, the principal and serious ones only being adhered to.   They are : that under a contract with the City the defendant Company is exempt from taxation ; that if such be not the case, that half of the sheds belonging to the City, it is not liable to taxation and that the tax sued for can be enforced on the remaining half only which is the property of the Company.

It is further urged in the alternative, that the defendant has paid to the City, under the terms and conditions of the contract, in the shape of a bonus, for the consideration of said contract, the sum of $3,181.63, which should be applied to the claim now urged.

There was judgment in favor of the City for $2,700, with ten per cent. interest, and for defendant for $3,181.63, with five per cent. interest, the court refusing the quasi compensation set up.

The facts are, that the City of New Orleans in 1869 conceded to F. B. Fleitas, from whom the defendant Company holds, the exclusive use of said public places known as the sugar landing, for the term of twenty-five years, with the obligation of building sheds and with the right of collecting dues at those places on certain conditions.

The two important portions of the contract, which have an immediate bearing on this controversy, are Sections 3 and 4, which read as follows :

SEC. 3.   " The said Fleitas shall pay to the City of New Orleans, as a consideration for said privilege, during the term aforesaid, ten per centum of the gross amount of charges realized for shelter on each hogshead of sugar and molasses placed under said sheds ; the said ten per cent. to be paid quarterly, on statements rendered under oath to the Treasurer of the City of New Orleans ; provided, that said sheds, and the revenues or income derived therefrom, or from said privilege, shall not be subject to any municipal taxation whatever during the existence of said privilege."

Sec. 4. " In addition to the above consideration, the said sheds, at the expiration of said term of twenty-five years, are to be appraised at their then cash value, in the manner following: one appraiser to be appointed by the said Fleitas, or his representatives, successors or assigns, and the other by the City of New Orleans. The two thus selected shall call in a third disinterested person as umpire, and the appraisement thus made shall be conclusive and binding on all parties, and the City of New Orleans shall have the option to take said sheds at one-half of said appraised value, or of extending the privilege herein granted, on the same terms as those herein specified, for the further period of fifteen years, except that at the expiration of said fifteen years said sheds are to revert to the City in full ownership, free of all costs."

The consideration for the privilege of occupying and using said public places, which are a *locus publicus*, and of collecting the dues on the sugar and molasses there landed, was clearly, in the honest contemplation of the parties: 1st, that Fleitas would build the required sheds and keep them in good condition; 2d, that he would pay to the City one-tenth of the gross receipts or dues realized for sheltering sugar and molasses under said sheds; 3d, that at the end of the term of twenty-five years the City would have the option to take the sheds at one-half of their appraised value, or extend the privilege for fifteen years, at the end of which the sheds would revert to the City in full ownership and free of costs; 4th, that said sheds and the revenues or income derived therefrom, or from the privilege, would not be subject to any municipal taxation whatever during the existence of said privilege.

## I.

It takes no argument or authority to establish that the City had no power to exempt the property of the defendant, or to commute the taxes upon it, as is claimed was done. 31 An. 447; 28 An. 756, 498.

## II.

The second proposition cannot be sustained. From the very terms of the contract, it is apparent that the contingent undivided interest of the City in the sheds consists merely in the slim hope of a possibility of exercising an option as to part ownership, at the end of the twenty-five years, for which the privilege was conceded, and eventually of claiming such ownership in full at the expiration of the fifteen years' extension, should there be any shed in existence at the termination of the first or second.

We have searched in vain the record to discover what was the insurance effected on the sheds by the defendant. Had the policies

been introduced, it would no doubt have been to show such insurance for the joint account of the Company and of the City. We found none. In the absence of such significant fact, we must infer the reverse.

In the case of this Company vs. Harris, Tax Collector, 26 An. 378, which was an injunction to be relieved from a tax on their capital invested in these very sheds, the defense was not set up that they belonged one-half to the City, and the State recovered.

In the case of the City vs. Russ, 27 An. 413, the question arose as to the right of the plaintiff to recover taxes on buildings and improvements placed by a lessee on lots belonging to the Poydras Asylum under a contract, under which, at the expiration of the lease, the Asylum was to acquire the same at the value put by experts. It was there decided that there was no doubt of the existence of such right, and the City recovered.

This ruling was affirmed in Lee vs. City, 28 An. 426.

### III.

It now remains to be considered whether the City can recover, besides the tax, the ten per cent. bonus, and whether, if she cannot, this bonus which was paid should or not be applied to the satisfaction of the tax recovered.

The City contends that the proviso contained in the section relative to the payment of the ten per cent. bonus was stipulated in violation of a law of public order; that it must be considered not written and, therefore, as having no existence.

There can be no doubt that, as the City had no power to exempt from taxes or agree legally to a commutation, the stipulation of exoneration was in contravention of law, but it does not follow that, therefore, the City must recover the bonus. The understanding was that the bonus would be paid, provided no taxes were demanded. If the condition upon which the bonus was to have been paid be prohibited, then it is void, and its nullity is destructive of the contract based upon it.

The law distinctly says:

R. C. C. 2031. Every condition of a thing impossible, or *contra bonos mores* (repugnant to moral conduct, or prohibited by law) is null and renders void the agreement which depends upon it.

The City, therefore, cannot recover both the tax and the bonus. 28 An. 497.

But now, can the City, after receiving the bonus, be required to apply it to the payment of the tax for which recovery is presently had?

It is evident that, for motives of public policy, this cannot be allowed.

The City has no right to exempt, no right to commute, no right to divert her revenues appropriated by law for special purposes.

The law requires that revenues derived from the assessment of taxes shall be received as such and be appropriated in certain ways. Other revenues collected otherwise are differently applied. Public revenues are not compensable. 33 An. 21.

There is nothing to show that the bonus was paid as taxes, was received as such and applied to the uses to which the law requires that they be appropriated. It is probable, almost to certainty, that the bonus was applied to purposes to which taxes are not appropriated, and thus distributed and beyond reach.

Permitting and sanctioning such a course would be to legalize not only a disturbance of the functions of the municipal government, but to justify a total disruption of the machinery by which they are set in motion and kept in proper order and balance. A furtherance of the ends of such government imperiously forbids any transgression of those salutary rules.

We find no error in the judgment appealed from, which is affirmed with costs.

Rehearing refused.