Opinion of the court—BEAN, J.

[Argued November 29, 1892; decided January 2, 1893.]

23  339
28  346
31* 779
31* 782

## HOGG, RECEIVER, v. MACKAY, SHERIFF.

[ S. C. 31 Pac. Rep. 779; 19 L. R. A. 77.]

CONSTITUTIONAL LAW—COMMUTING TAXES—STATE CONSTITUTION, ART. I.,
SEC. 32, AND ART. IX., SEC. 1.—A commutation of all taxes on the prop-
erty of a railroad company for twenty years in consideration of its car-
rying, without charge, all troops and munitions of war which the state
requires to be carried, violates a constitutional provision requiring that
all taxation shall be equal and uniform, and that there shall be a "just
valuation for taxation of all property," excepting certain classes.*

Benton County:  MARTIN L. PIPES, Judge.

Defendant appeals.  Reversed.

*W. S. McFadden, D'Arcy & Bingham,* and *W. S. Hufford
(J. W. Rayburn* on the brief), for Appellant.

*J. R. Bryson* and *Earl C. Bronaugh (McArthur, Fenton
& Bronaugh* on the brief), for Respondent.

BEAN, J.—This is a suit by T. Edgerton Hogg, receiver
of the Willamette Valley & Coast Railroad Company, to
enjoin the sheriff of Benton County from collecting or
attempting to collect the state and county taxes assessed
and levied upon the property of the said railroad com-
pany for the year 1889, and involves the constitutionality
of section 11 of "An act to provide for the construction
of the Willamette Valley & Coast Railroad," approved
October 24, 1874 (Laws 1874, 51), as extended by the act
approved February 5, 1885 (Laws 1885, 7), which reads
as follows: "Section 11. That if said Willamette Val-
ley & Coast Railroad Company shall, within ninety days
after the approval hereof by the governor, file in the
office of the secretary of state its agreement, duly exe-
cuted under its corporate seal, obliging itself to carry
all troops and munitions of war of this state required to

* NOTE.—The power of the legislature to exempt property from taxation
is reviewed in an exhaustive note to this case in 19 L. R. A. 77, while the
power of a municipality to make such exemption is fully treated in a note to
the Virginia case of *Whiting* v. *West Point,* 15 L. R. A. 850.—REPORTER.

be conveyed on its road without charge to the state, for a period of twenty years from and after such approval, without other compensation than the moneys arising from taxes assessed, levied, or collected on the property of said company; then, in consideration of said agreement, and said services done or to be done for said period of twenty years, said company shall have and receive during all said term all the taxes levied, assessed, or collected, or which might have been levied, assessed, or collected by the state, upon all its property, real and personal, and said taxes are hereby appropriated therefor."

The contention is, that this section is in violation of the provisions of the constitution of this state that "all taxation shall be equal and uniform," and that the legislature "shall provide by law for uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting such only for municipal, educational, literary, scientific, religious, or charitable purposes as may be specially exempted by law": Section 32, article I., and section 1. article IX.

The power of taxation, and the right to prescribe what property shall be taxed, is a sovereign right belonging to the state in its sovereign capacity, and in the absence of a constitutional restriction, necessarily implies the power to prescribe what property shall be exempt from taxation; hence it has been held that, when not prohibited by the state constitution, the legislature can bind the state by a contract with either an individual or corporation to surrender the right of taxation by the grant of either a perpetual or transient immunity from taxation, either in the form of a contract to pay a fixed sum in lieu of all taxes or by way of commutation, whatever the latter term may mean; and that as to the sufficiency of the consideration for such contract, the legislature is the sole and exclusive judge: Cooley Taxation, 53; Desty Taxation, 127; *Home of the Friendless* v. *Rouse,* 75 U. S. (8 Wall.) 430; *Humphrey* v. *Pegues,* 83 U. S. (16 Wall.) 244; *Hund-*

*saker* v. *Wright*, 30 Ill. 146. But this doctrine has been questioned by the courts of many of the states, as well as by able dissenting opinions in the supreme court of the United States, upon the principle that the legislature has no right to bargain away the taxing power of the state so as to place it beyond the control of succeeding legislatures: Desty Taxation, 128; note to *Northwestern University* v. *People*, 18 Am. L. Reg. (N. S.) 366, where the authorities are collected and reviewed.

However this may be in the absence of a constitutional limitation, it seems to us there is no room for argument that under our constitution no power exists in the legislature to exempt by contract, commutation, or otherwise, any property whatever, except certain classes specially enumerated therein, from bearing its just proportion of the burdens of government. The provisions of the constitution are mandatory, that all taxation shall be equal and uniform, and the legislature shall prescribe regulations for a just valuation of all property for taxation, excepting only the enumerated classes. The language of the constitution is plain, simple, and easily understood, and manifestly operates as an absolute inhibition against the exemption, either directly or indirectly, of any property from taxation, except that specially enumerated. In *Crawford* v. *Linn County*, 11 Or. 494 (5 Pac. Rep. 738), WALDO, C. J., in speaking of the effect of the latter clause of section 1, article IX., of the constitution, says it "actually forbids the exemption from taxation of any property whatever, except that specially enumerated in the clause." See also *Chesapeake & O. R. R. Co.* v. *Miller*, 19 W. Va. 408; *Huntington* v. *Worthen*, 120 U. S. 97 (7 Sup. Ct. Rep. 469); *Zanesville* v. *Richards*, 5 Ohio St. 589; *People* v. *McCreary*, 34 Cal. 432; *People* v. *Eddy*, 34 Cal. 331 (13 Am. Rep. 143); *Fletcher* v. *Oliver*, 25 Ark. 289; *Nashville R. R. Co.* v. *Wilson Co.* 89 Tenn. 597 (15 S. W. Rep. 446).

While counsel for plaintiff frankly admit that the legislature had no power under the constitution to exempt the property of their client from taxation, they urge

that section 11 of the act of 1874 is not an exemption of the property from taxation, but a commutation of the taxes, for what the legislature determined to be an adequate equivalent, and therefore is not obnoxious to the constitutional provisions. A sufficient answer to this position is that the legislature cannot do indirectly what it is prohibited from doing directly. The right to commute is simply an incident of the right to exempt, and the denial of the power to exempt must necessarily preclude the existence of the power to commute. As was said by WHITE, J., in *Louisiana Cotton Mfg. Co.* v. *City of New Orleans*, 31 La. Ann. 440, the right to commute may be said to be "a payment of a designated sum for the privilege of exemption, or the selection in advance of a specific sum in lieu of an *ad valorem* tax. If the first, it is indubitably an exemption; if the second, then it is a specific tax, and hence violates the rule of *ad valorem*, which prescribes that all property shall be taxed according to value." Either view is fatal to plaintiff's contention in this case. The constitution absolutely prohibits the exemption of any property, except for municipal, educational, literary, scientific, religious, or charitable purposes, and as no part of plaintiff's property is included within any of these enumerated classes, any law which attempts to exempt it from taxation is void. And "any law which indirectly produces such exemption must be equally void; that cannot be accomplished indirectly which the organic law declares shall not be done directly": Mr. Justice FIELD, in *Huntington* v. *Worthen*, 120 U. S. 97 (7 Sup. Ct. Rep. 469).

The provisions of our constitution were manifestly intended to require and insure equality in the manner and mode of the assessment, and the levy and collection of taxes for the support of the government, and to impose an equal proportion of these burdens upon all persons within the limits of the taxing district; and to that end prohibited special or class legislation of the character sought to be upheld in this case. If the legislature can,

for any consideration it may deem adequate, exempt or
commute the taxes on one class of property, or on the
property of one taxpayer, it can do the same with any or
all property, and the proportion of the burden of main-
taining the government borne by any taxpayer will de-
pend, not on the amount or value of his property, but
upon his success in securing advantageous legislation.
If such a doctrine should be recognized by the courts, the
constitution will put no hinderance to rich and powerful
corporations. or rich men making contracts with the
legislature for perpetual exemption from all the burdens
of supporting the government, and the property owner
who is unable to obtain such contracts, or commutation,
will be compelled alone to bear such burdens. "The
result of such a principle," says Mr. Justice MILLER,
"under the growing tendency to special and partial legis-
lation, would be to exempt the rich from taxation, and
cast all the burden of supporting the government and
the payment of its debts on those who are too poor or
too honest to purchase such immunity": *The Washington
University* v. *Rouse,* 75 U. S. (8 Wall.) 444. A construction
of the constitution which would permit or allow oppor-
tunities for such manifest injustice, cannot receive the
sanction of this court.

So obviously unconstitutional is the provision of the
act of 1874, which attempts to relieve the plaintiff from
the payment of any state or county taxes on its property
for a designated period, in consideration of its agreement
to convey the troops and munitions of war of the state
over its road, that it seems almost unnecessary to cite
authorities in support of that position; but, as showing
the construction put upon similar constitutional provis-
ions by the courts of other states, reference will be made
to some of the adjudged cases. In *Memphis & Charleston
R. R. Co.* v. *Gaines,* 3 Tenn. Chan. 604, and *Ellis* v. *L. & N.
R. R. Co.* 8 Baxter, 530, under a constitution providing
that "all property shall be taxed according to its value,"
to be "ascertained in such manner as the legislature

shall direct, so that taxes shall be equal and uniform,"
it was held that an act of the legislature providing that
any railroad company which would accept certain amend-
ments to its charter, and pay annually to the treasurer
of the state, to be in full of all taxation, a certain per
cent of its gross receipts, should be exempt from any
further taxation, was unconstitutional and void. And
these decisions were affirmed by the supreme court of the
United States in *Railroad Co.* v. *Gaines*, 97 U. S. 697. So
in *State* v. *Hannibal & St. Joe R. R. Co.* 75 Mo. 208, under a
constitution providing that "all property subject to tax-
ation ought to be taxed in proportion to its value," and
that "no property real or personal shall be exempt
from taxation," it was held that a contract between a
municipality and a railroad company, that the munici-
pality should relinquish and forego all right or claim
to tax the property of the corporation, in consideration
that it should locate and maintain its general office and
machine-shops within the corporate limits and pay an-
nually to the corporation seven hundred dollars in money,
was in violation of the constitution and void. And
again, in *City of New Orleans* v. *Lafayette Insurance Co.* 28
La. Ann. 756, under a constitution that all "taxation shall
be equal and uniform throughout the state," and all
property "shall be taxed in proportion to its value," an
act of the legislature providing that all insurance com-
panies doing business in the state shall pay an annual
license tax of one thousand dollars, which "shall be
deemed a full acquittance for all taxes imposed by state,
parish, or municipal authority for the year for which
said one thousand dollars is paid, except taxes on real
estate owned by said company," was declared to be in
violation of the constitution, and did not prevent the tax-
ation of the property of an insurance company. To the
same effect see *City of New Orleans* v. *Sugar Shed Co.* 35 La.
Ann. 548; *Chattanooga* v. *Nashville R. R. Co.* 7 B. J. Lea,
561.

The case of *Hundsaker* v. *Wright*, 30 Ill. 146, cited and

relied on by counsel for plaintiff, holding that under a constitution providing that "the legislative assembly shall provide for levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his or her property," it is competent for the legislature to commute a tax for a payment of money, or other equivalent, and that it is the sole judge of the propriety and value of such equivalent, does not commend itself to us as being supported by either reason or authority. The court, after declaring that the design and object of the constitution is to impose an equal proportion of the burdens of taxation upon all persons, and that the legislature has no power to exempt or release any person from his proportionate share of this burden, proceeds to hold that this design is not violated by the commutation of the tax for any consideration by the legislature deemed sufficient. To such a doctrine we are unable to subscribe. It seems manifest to us that the very object and design of the constitution, as stated by the court,—an equal and just distribution of the burdens of taxation,—is plainly violated by the conclusion reached by the court in that and other Illinois cases holding the same doctrine. But whether this is true or not, the Illinois constitution is radically different from ours, and hence the cases from that state are not in point in this discussion.

In declaring unconstitutional section 11 of the act of 1874, which attempts to relieve the plaintiff from the payment of any taxes on its property in consideration of its agreement to carry the troops and munitions of war of the state, we are not unmindful of the respect due a co-ordinate branch of the government, or the hesitancy with which a court always approaches the question of holding a legislative act void. But, as said by Chancellor KENT, "the courts of justice have a right and are in duty bound to bring every law to the test of the constitution, and to regard the constitution as the paramount law, to which every inferior or derivitive power and regulation

must conform.    The constitution is the act of the people, speaking in their original character, and defining the permanent conditions of the social alliance, and there can be no doubt on the point, with us, that every act of the legislative power contrary to the true intent and meaning of the constitution, is absolutely null and void." (1 Com. 450.)    Hence, when it appears to a court that the legislature has plainly violated the paramount law of the land, as in this case, this court would be unworthy of its high station and the solemn obligation that station imposes, should it hesitate to so declare.

The decree of the court below is therefore reversed and the complaint dismissed.