# THE MAYOR AND COMMON COUNCIL OF WESTMINSTER

## *vs.*

# THE CONSOLIDATED PUBLIC UTILITIES COMPANY.

*Chapter 341 of Acts of 1910, authorizing Westminster to regulate the rates of water company: conflict with the Public Service Commission Act. Special laws: section 33 of Article III of Constitution.*

Chapter 341 of the Acts of 1910 (page 683), providing for the regulation by the Mayor and City Council of Westminster of the rates of the Water Company that supplies that town with water, is a special law dealing with a subject for which provision was already made by the Public Service Commission Law, and is therefore void because in conflict with section 33 of Article III of the State Constitution.          p. 378

*Decided February 28th, 1918.*

Appeal from the Circuit Court for Carroll County. (In Equity.)  (FORSYTHE, JR., J.)

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Guy W. Steele,* for the appellant.

*F. Neale Parke* (with a brief by *Bond & Parke*) and *William Cabell Bruce,* who filed a brief on behalf of the Public Service Commission, for the appellee.

URNER, J., delivered the opinion of the Court.

The Consolidated Public Utilities Company, a corporation formed under the general incorporation law of Maryland, is engaged in the business of supplying water, gas and electric light to the municipality and residents of Westminster. The water required by the municipal authorities for protection against fire and for other public purposes was furnished by the Utilities Company under a contract with the Mayor and Common Council of Westminster, which covered a period of fifteen years and expired by its own limitations on October 2, 1917. This agreement not only specified the charges to be made for the water supplied to the city for its corporate uses, but also included a schedule of the rates at which water was to be furnished to private consumers. The approval of the latter rates by the Mayor and Common Council was expressed in the agreement in pursuance of a provision to that end in the municipal charter. On September 1st, 1917, the Utilities Company filed with the Public Service Commission of Maryland a schedule of increased charges, for the public and private use of water in Westminster, to become effective a month later upon the expiration of the period of the contract then in force. This proposed advance of the water rates is resisted by the municipality. No such change could lawfully be made without its approval under the charter of Westminster as it stood at the time of the execution of the agreement in which the former rates were scheduled, and by the Act of 1910, Chapter 341 (page 683), which revised the charter, it was provided that the existing rates of the Utilities Company for supplying water, gas and electric light to the City of Washington and its inhabitants

should not be thereafter increased without the consent of the Mayor and Common Council, and that in the event of disagreement as to any proposed increase of rates the question should be settled according to a prescribed method of arbitration. In reliance upon these charter limitations the city filed a bill in equity to enjoin the Utilities Company from enforcing the new schedule of water rates until the consent of the Mayor and Common Council should be obtained, or the propriety and the amount of increase of rates should be determined by arbitrators, as required by the municipal charter, or adjudicated by some other legally constituted authority. Demurrers to the bill were filed by the Consolidated Public Utilities Company and by the Public Service Commission, the latter having been admitted as a party to the case on its petition. The principal ground upon which the demurrers were based, and the one upon which they were eventually sustained and the bill dismissed, was that the provision of the charter of Westminster, as amended by the Act of 1910, which committed the question of any increase in the water rates of the Utilities Company to the judgment of the Mayor and Common Council, and, in case of its adverse action, to the decision of a board of arbitrators, is a special law dealing with a case for which provision was made by the existing general law investing the Public Service Commission with exclusive authority to regulate the charges of such corporations, and is, therefore, in conflict with section 33 of Article III of the Maryland Constitution. Inasmuch as we fully concur in the view of the lower Court that the objection just stated is fatal to the city's right to maintain the suit, we shall not discuss any of the other questions raised by the demurrers.

.The charter revision Act of 1910, in so far as it relates to the service charges of the Consolidated Public Utilities Company, is undoubtedly a special law. It provides an exclusive system of rate regulation for a single designated corporation. It deals specifically and separately with an indi-

vidual member of a class of public service agencies, and its character as a special law, according to the settled definition of that term, is unmistakable. *Prince George's County v. B. & O. R. R. Co.,* 113 Md. 183; *Baltimore v. Star Church,* 106 Md. 289; *Baltimore v. Allegany County,* 99 Md. 1; *State ex rel. Webster v. Baltimore County,* 29 Md. 520; *Cooley's Constitutional Limitations,* 165, note.

Prior to the enactment of Chapter 341 of the Acts of 1910, providing specially for the regulation of the rates of the Consolidated Public Utilities Company, the statute creating the Public Service Commission had been passed and approved during the same session of the General Assembly. By that Act general provision was made for the supervision and regulation of the rates of all the public service agencies and enterprises therein mentioned, including all water, electric light and gas companies operating within the State. The Public Service Commission was charged with the duty and clothed with full power, under the Act, to require the plaintiff and all other corporations of its class in Maryland to furnish adequate service to its patrons at rates which the Commission might approve as being just and reasonable. Complete jurisdiction was conferred upon the Commission by the statute to investigate the service rates of such agencies, on its own motion or on complaint made by a specified number of patrons of the particular utility, or by the Mayor or chief executive officials of the municipality or county in which the enterprise is being conducted, and to fix the maximum price, within lawful limits, at which the utility shall be supplied, subject to a right of appeal to the courts by any of the parties interested. In order to remove any statutory barrier to its comprehensive effect, as to rate regulation, the Public Service Commission Law repealed all Acts or parts of Acts, theretofore passed and then existing, which prescribed or limited the price of any product or utility furnished by any corporation to which the new system of regulation was in general terms made applicable. *Code,* Art. 23,

section 444.   The Consolidated Public Utilities Company was unquestionably brought within the operation of that system by the explicit provisions of the statute.   It was included in the class of corporations described by the Act, as being subject to its operation, and any pré-existing clause of the charter of Westminster which might have been in conflict with the exclusive exercise of regulative power by the Public Service Commission as to that company was expressly repealed.   *Gregg* v. *Public Service Commission,* 121 Md. 21. The fact that the former water rates of the Utilities Company had been approved by the Mayor and Common Council could not debar either the corporation or the municipality, after the expiration of the agreement in which the rates were sanctioned, from applying to the Public Service Commission for a revision of the charges, by such increase or diminution as might be reasonable, in view of changed conditions. The statute by which both the Company and its public and private patrons were afforded this protection is manifestly general in its character within the meaning of the clause of the Constitution which forbids the enactment of a special law for any case for which an existing general law makes provision.   *Const.,* Art. III, Sec. 33.   The subsequent Act which undertakes to deal specifically with the regulation of the rates of the plaintiff corporation, is clearly repugnant to the constitutional prohibition.

The very recent case of *Mayor and Council of Crisfield* v. *C. & P. Telephone Company,* decided by this Court on November 15, 1917, is conclusive of the question now being considered.   In that case it was held that a provision in the charter of the appellant municipality, enacted subsequently to the Public Service Commission Law, and conferring power upon the city to regulate the rates of public utility companies to which it had granted, or might thereafter grant, franchises, was a special law dealing with cases for which the existing general law on the subject fully provided, and was therefore unconstitutional and void.   Upon the same principle statutes

have been declared invalid in the earlier cases of *Prince George's County* v. *B. & O. R. R. Co., Baltimore* v. *Star Church,* and *Baltimore* v. *Allegany County, supra.*

The case of *Baltimore* v. *United Railways Company,* 126 Md. 39, cited by the appellant, was concerned with a statute which was recognized as being for a special purpose, but it was held free of constitutional objection because the railway company, whose relations with the city in certain particulars were adjusted by the Act, was properly to be regarded as a class of itself, and because there was no general law covering the conditions there involved.

The special law now under inquiry is directed and confined to a case for which ample provision is made by an existing general law, and hence it is an enactment which the Constitution plainly and positively prohibits.

*Decree affirmed, with costs.*