## MAYOR AND CITY COUNCIL OF BALTIMORE v. WILLIAMS.

## MAYOR, COUNSELOR & ALDERMEN OF CITY OF ANNAPOLIS v. SAME.

### Nos. 3347, 3351.

Circuit Court of Appeals, Fourth Circuit.

Oct. 3, 1932.

Lawrence B. Fenneman and R. E. Lee Marshall, both of Baltimore, Md. (Hector J. Ciotti, of Baltimore, Md., on the brief), for appellant Mayor and City Council of Baltimore.

Roscoe C. Rowe, of Annapolis, Md., for appellant Mayor, Counselor, and Aldermen of City of Annapolis.

William L. Rawls and George Weems Williams, both of Baltimore, Md., for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and GLENN, District Judge.

PARKER, Circuit Judge.

These are appeals by the mayor and city council of Baltimore and the mayor, counselor and aldermen of the city of Annapolis from orders of the court below denying claims filed with the receiver of the Washington, Baltimore & Annapolis Railway Company. The claims filed were for taxes assessed by the cities of Baltimore and Annapolis for the year 1931 upon the property of the railway company, and for the amounts due under the provisions of ordinances under which the company was allowed to construct and maintain its tracks over the streets of the respective cities. The claims were denied under the authority of chapter 497 of the Acts of Maryland of 1931, which is as follows:

"An Act to exempt the railroad property of the Washington, Baltimore and Annapolis Electric Railroad Company, or so much thereof as may be used for railroad purposes by said company, its receiver, successors and assigns, from all State taxes and charges, including contributions to the cost of construction of railroad crossings made or to be made under the authority of the State Roads Commission, and from all county and city taxes and charges in the nature of a tax for the years during which the property is so used, but not exceeding two years beginning January 1, 1931.

"Whereas, The Washington, Baltimore and Annapolis Electric Railroad Company did not in the year 1930 earn its operating charges, and it is of the utmost importance for the welfare of the State and particularly the communities served by said railroad, that the operation of said railroad be continued, and

"Whereas, It is in the judgment of the General Assembly of Maryland a wise and sound public policy to encourage the continued operation of said railroad by the exemption herein provided:

"Section 1. Be it enacted by the General Assembly of Maryland, That the railroad property of the Washington, Baltimore and Annapolis Electric Railroad Company, or so much thereof as may be used for railroad purposes by said company, its receiver, successors and assigns, be exempt from all State taxes and charges, including contributions to the cost of construction of railroad crossings made or to be made under the authority of the State Roads Commission, and from all county and city taxes and charges in the nature of a tax for the years during which the property is so used, but not exceeding two years beginning January 1, 1931.

"Sec. 2. And be it further enacted, That this Act shall take effect June 1, 1931."

The claims which were denied include taxes imposed by the cities upon the property of the railway company pursuant to article 81 of the Maryland Code (Supp. 1929). The taxes so imposed by the city of Baltimore amount to approximately $50,000; those imposed by the city of Annapolis, to approximately $3,000. They also include so-called taxes due under franchise ordinances granted by the cities. These in the case of the city of Baltimore amount to approximately $20,000; in the case of the city of Annapolis, to approximately $2,000. The franchise ordinances of the two cities are substantially similar. The pertinent portions of the Baltimore ordinance, which was passed April 27, 1906, are as follows:

"Sec. 13. And be it further ordained, that in consideration of the several rights, privileges and franchises herein granted to the Baltimore Terminal Company, the Washington, Baltimore and Annapolis Electric Railway Company and the Baltimore and Annapolis Short Line Railroad Company, each of said grantees, their successors or assigns, hereby agrees to pay and shall pay to the Mayor and City Council of Baltimore in quarterly instalments, on the first days of

January, April, July and October of each and every year a tax of four and one-half mills for every passenger above the age of twelve years, and of two and seven-tenths mills for every passenger between the ages of four and twelve years, carried by it, respectively, over the tracks hereby authorized, or any part thereof, for a whole or part trip within the present limits of the city of Baltimore, or as the same may be hereafter extended from time to time, and without regard to the fact that their lines of railway, or any part thereof, are or may be situated upon private rights of way instead of city streets, and also without regard to the fact whether such passenger has boarded the car within or without the city limits, as the same now exist or may be hereafter extended from time to time; and each of the said grantees also agrees to pay and shall also pay to the said Mayor and City Council of Baltimore in quarterly instalments, on the first days of January, April, July and October, of each and every year, a tax of one per cent. upon their respective gross receipts derived from mail, baggage, express matter, milk, truck and light freight carried by it, respectively, over any of their respective lines from or to any point on the tracks hereby authorized within the present limits of the city of Baltimore, or as the same may be hereafter extended from time to time, without regard to the place of origin or destination of said mail, baggage, express matter, milk, truck and light freight, and the Baltimore Terminal Company shall also pay to the Mayor and City Council of Baltimore the sum of five hundred dollars, said sum to be paid to the Mayor and City Council of Baltimore upon commencement of work by it under this ordinance.

"Sec. 14. And be it further ordained, That upon the failure of the said grantees, or any of them, their successors or assigns, to comply with any of the terms or conditions of this ordinance, the rights, privileges and franchises hereby granted shall be and become wholly null and void.

"Sec. 15. And be it further ordained, That neither the passage of this ordinance nor anything contained herein, *especially the provision herein for compensation to the city,* shall be taken as in anywise prejudicing the pending contention of the city with reference to the accessability and taxability of street franchises or easements." (Italics ours.)

Before coming to the question of the constitutionality of this statute, which is the question argued before us by counsel, we think it well to observe that, as we interpret the statute, it has no application to the moneys due by the railway company under the franchise ordinances, and consequently does not affect the liability of the railway company with regard thereto. It will be observed that it is "the railroad property" which is exempted from taxation; and it is exempted, so far as counties and cities are concerned, only from "county and city taxes and charges in the nature of a tax."

"A tax is an enforced contribution of money or other property, assessed in accordance with some reasonable rule of apportionment by authority of a sovereign state on persons or property within its jurisdiction, for the purpose of defraying the public expenses." 26 R. C. L. 13. It differs from a payment due under a contract in that the latter arises out of the agreement of the party from whom it is due, whereas a tax depends not upon consent but upon the sovereign power of the state. State Freight Tax Case, 15 Wall. 232, 278, 21 L. Ed. 146. A charge exacted by a city for the use of its streets is not a tax. "It is more in the nature of a charge for the use of property belonging to the city,—that which may properly be called rental. * * * That by it the city receives something which it may use as revenue does not determine the character of the charge or make it a tax. The revenues of a municipality may come from rentals as legitimately and as properly as from taxes." St. Louis v. Western Union Tel. Co., 148 U. S. 92, 97, 13 S. Ct. 485, 487, 37 L. Ed. 380; Postal Tel. Co. v. Mayor, etc., of Baltimore, 79 Md. 502, 29 A. 819, 24 L. R. A. 161; Mayor, etc., of Baltimore v. Baltimore, etc., R. Co., 84 Md. 1, 35 A. 17, 33 L. R. A. 503; City of Springfield v. Postal Tel. Co., 253 Ill. 346, 97 N. E. 672; Postal Tel. Co. v. City of Newport, 76 S. W. 159, 25 Ky. Law Rep. 635; 26 R. C. L. 14. And see McQuillin Municipal Corporations (2d Ed.) vol. 4, § 1772, where the rule as to requiring compensation upon the granting of a franchise is stated as follows:

"A municipal corporation, having entire control of its streets and power to impose conditions on granting a franchise to use the streets, may require compensation for their use by public service companies, as a condition of the grant of the right to use them, unless forbidden by statute, as by requiring the company to pay a certain portion of its receipts as compensation for the use of streets, or a certain per cent of the dividends declared, or exacting a license fee of a cer-

tain sum for each car to be paid annually to the city, or an annual tax on each mile of its tracks. * * * So if the grant of the right to use streets is conditioned on the payment of a certain sum per year, the fact that such charge is called a license tax does not make it such, within the rule that license taxes must be imposed equally on all persons engaged in the same business."

A payment required as a condition of the granting of a franchise to use the streets of a city is not different in principle from the exaction of any other payment by a city as a return for the use of property or facilities furnished by it; and it is uniformly held that such payments are not taxes and are not governed by the rules relating thereto. Thus, the water rent imposed by a city for water which it furnishes is not a tax (Jones v. Detroit Water Com'rs, 34 Mich. 273); nor is a fee imposed for the use of a sewer (Carson v. Brockton Sewerage Com., 182 U. S. 398, 400, 21 S. Ct. 860, 45 L. Ed. 1151); nor is a charge for the use of municipal wharves (Parkersburg & O. R. Transp. Co. v. Parkersburg, 107 U. S. 691, 2 S. Ct. 732, 27 L. Ed. 584); nor a toll for the use of an improved highway (State Freight Tax Case, supra). In St. Louis v. United Railways Co., 210 U. S. 266, 278, 28 S. Ct. 630, 634, 52 L. Ed. 1054, the Supreme Court, speaking through Mr. Justice Day, makes clear the difference between payments required as the condition of granting a franchise and the imposition of a franchise tax. He says:

"It is true that the city, in granting the right to use the streets by special ordinance, and in exercising by general ordinance the right conferred in the charter to impose a license tax upon cars, is dealing with rights and privileges somewhat similar, but, nevertheless, essentially separate and distinct. In the special ordinances the city is making an arrangement with the railway company to confer the right to use the streets in consideration of certain things the company is to do by way of operation and otherwise, including, it may be, payment of fixed sums or a proportion of receipts in consideration of the rights and privileges conferred. The city does this by virtue of its power to grant rights and privileges and control their exercise in the streets of the city,—power expressly conferred in the charter of the city. In the fixing of a license tax upon all companies alike for the privilege of using cars in the city, it is exerting other charter powers. It makes provision uniformly applicable to all persons or companies using street cars. It is a revenue measure equally applicable to all coming within its terms."

There can be no question but that the ordinances here under consideration did not impose license taxes, but provided for payments as a matter of contract in return for the privileges and franchises granted. The section requiring the payments provides that same are to be made "in consideration of the several rights, privileges and franchises herein granted"; the following section provides that, upon failure of the grantees to comply with the terms and conditions of the ordinances, the rights, privileges, and franchises granted shall be avoided; and the last section refers to the provision requiring payment of a portion of the fares collected and a percentage of receipts from freight, etc., as "the provision herein for compensation to the city." This shows clearly, not only that the city was making a contract and not levying a tax, but also that this was thoroughly understood at the time. The fact that the ordinance speaks of a "tax" on each fare and a "tax" on receipts from freight, etc., is immaterial. The nature of the payment provided for in the ordinance depends upon the right under which same is demanded, not upon what the parties may have called it. Postal Tel. Co. v. Newport, supra; Lipke v. Lederer, 259 U. S. 557, 561, 42 S. Ct. 549, 66 L. Ed. 1061; Child Labor Cases, 259 U. S. 20, 42 S. Ct. 449, 66 L. Ed. 817, 21 A. L. R. 1432.

And we do not think that the payments required by the ordinance can be said to be "charges in the nature of a tax." As pointed out by the Supreme Court in the case of St. Louis v. Western Union Tel. Co., supra, they are charges in the nature of rent. A charge in the nature of a tax is a charge exacted by the state in the exercise of its sovereign power, such as a special assessment against property specially benefited by a public improvement, or the case mentioned in the statute itself of enforced contribution to the cost of construction of railroad crossings. Payments required by contract in consideration of the use of public property are in no sense charges in the nature of a tax.

Since the statute upon which the receiver relies relieves only against taxes or "charges in the nature of a tax," and since the payments required by the franchise ordinances do not fall within either classification, it clearly has no application to them. But there is yet another reason why they are not affected. It is only the property of the railway company which is relieved of taxes, not the busi-

ness which it does; and, even if the payments required by the ordinances be regarded as taxes, they are not taxes on the property of the railroad, but on business done by it. As the statute does not profess to relieve against excise taxes, or taxes on business, they are clearly not affected. A statute relieving against taxes on property will not be construed to cover excise or franchise taxes; for it is elementary that exemptions from taxation must be strictly construed. Vicksburg, etc., R. Co. v. Dennis, 116 U. S. 665, 6 S. Ct. 625, 29 L. Ed. 770; Berryman v. Whitman College, 222 U. S. 334, 350, 32 S. Ct. 147, 56 L. Ed. 225; 26 R. C. L. 274.

As the statute has no application to the so-called taxes on fares and on receipts from freight, etc., we need not consider interesting constitutional questions which would arise if it were applicable to them. We will say in passing, however, that, if the act were construed to relieve the railroad company against these as well as against taxes on property, a grave question would arise as to whether it would not be violative of article 3, § 29, of the Constitution of Maryland, which requires that a law enacted by the Legislature shall embrace but one subject. Relief against tax on property and relief against contractual liability with a municipality are certainly two separate and distinct matters. And certainly relieving against liability assumed upon the acceptance of a franchise granted by the city would seem to be in violation of the spirit, if not the letter, of the "Home Rule" provision of the Maryland Constitution, article 11A.

 We come then to the question as to the constitutionality of the statute as applied to the tax imposed on the property of the railroad; and we think it must be condemned as violative of the Fourteenth Amendment to the Federal Constitution, the uniformity provision of the Maryland Constitution, and article 3, § 33, of the Maryland Constitution, which limits the power of the Legislature in passing local or special laws.

Testing the statute by the Fourteenth Amendment, we think that the equal protection of the laws is denied where the property of railroads generally is taxed and the property of one particular railroad is exempted from taxation. The state, of course, has the right to classify property for the purpose of taxation; but a classification, to be sustained, "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." Royster Guano Co. v. Virginia, 253 U. S. 412, 40 S. Ct. 560, 561, 64 L. Ed. 989; Louisville Gas & Electric Co. v. Coleman, 277 U. S. 32, 48 S. Ct. 423, 72 L. Ed. 770. Here there is no classification, but an arbitrary exemption is granted to a single taxpayer. It is said that the corporation is insolvent and that the service which it renders is of importance to the public; but exemption is not granted to other insolvent taxpayers or even to other insolvent railroads. So far as the public service rendered by the corporation is concerned, it should be remembered that its property is dedicated to the public use and the mere fact of insolvency does not justify the abandonment of its operation. Its property is still owned by some one (its real ownership is in bondholders and creditors) and is still used for railroad purposes; and the financial condition of the corporation holding the legal title furnishes no reasonable basis for exemption when property of others used for railroad purposes is taxed. If the property of all insolvents, or even of all insolvent railroads, were exempted from taxation, a different question would be presented; but, as stated above, we have no attempt at classification but an arbitrary individual exemption.

Upon the question as to whether in levying a tax on property a state may discriminate because of ownership, the case of Quaker City Cab Co. v. Pennsylvania, 277 U. S. 389, 48 S. Ct. 553, 554, 72 L. Ed. 927, is in point. In that case the Supreme Court condemned a tax laid on the receipts of corporations from the business of operating taxicabs but imposing no tax on the same kind of business operated by individuals or partnerships. The court said: "The equal protection clause does not detract from the right of the state justly to exert its taxing power or prevent it from adjusting its legislation to differences in situation or forbid classification in that connection, 'but it does require that the classification be not arbitrary, but based on a real and substantial difference having a reasonable relation to the subject of the particular legislation.' Power [Mfg.] Co. v. Saunders, 274 U. S. 490, 493, 47 S. Ct. 678, 679, 71 L. Ed. 1165."

And with respect to the particular tax there under consideration, it said: "The gross receipts of incorporated operators are taxed, while those of natural persons and partnerships carrying on the same business are not. The character of the owner is the sole fact on which the distinction and dis-

crimination are made to depend. The tax is imposed merely because the owner is a corporation. The discrimination is not justified by any difference in the source of the receipts or in the situation or character of the property employed. It follows that the section fails to meet the requirement that a classification, to be consistent with the equal protection clause, must be based on a real and substantial difference having reasonable relation to the subject of the legislation."

Here the exemption rests upon no classification whatever except the ownership of the property by the railway company. Other railroads, even insolvent railroads, are not classified with it or given a like exemption. "The Fourteenth Amendment protects those within the same class against unequal taxation; all are entitled to like treatment." Hopkins v. Southern California Telephone Co., 275 U. S. 393, 403, 48 S. Ct. 180, 183, 72 L. Ed. 329. By the exemption in question this like treatment is denied.

And we think that the act clearly violates the uniformity clause of article 15 of the Declaration of Rights of the Constitution of Maryland. That article provides: "That the General Assembly shall, by uniform rules, provide for separate assessment of land and classification and sub-classifications of improvements on land and, personal property, as it may deem proper; and all taxes thereafter provided to be levied by the State for the support of the general State Government, and by the counties and by the City of Baltimore for their respective purposes, shall be uniform as to land within the taxing district, and uniform within the class or sub-class of improvements on land and personal property which the respecting taxing powers may have directed to be subjected to the tax levy."

Article 81, § 6, paragraphs (1) and (2), of the Annotated Code of Maryland, 1929 Supplement, provides that all real and tangible personal properties in the state, by whomsoever owned, shall be subject to assessment to the owner and taxation for ordinary taxes in the state and in the county and city in which same are situate. Under this provision, real and tangible personal property of railroad companies is subject to taxation just as the property of other individuals and corporations. The effect of the act in question is to create a special exemption from this tax in favor of the property of this particular railroad company. It would seem to require no argument to demonstrate that a law which exempts the property of one man from taxation while taxing the property of another in the same class violates the uniformity provision of the Constitution which we have quoted, and the courts of Maryland so hold. Baltimore City v. Starr Church, 106 Md. 281, 67 A. 261; Schley v. Lee, 106 Md. 390, 67 A. 252; Wells v. Hyattsville, 77 Md. 125, 26 A. 357, 20 L. R. A. 89. And see Susquehanna Power Co. v. Tax Commission, 159 Md. 334, 343, 151 A. 29. And this is in accordance with the construction placed on similar provisions elsewhere. 26 R. C. L. 252; note 19 L. R. A. 77; note 60 L. R. A. at page 364 and cases cited; Little Rock, etc., R. Co. v. Worthen, 120 U. S. 97, 7 S. Ct. 469, 30 L. Ed. 588; Memphis & C. R. Co. v. Gaines, 97 U. S. 697, 710, 24 L. Ed. 1091; Hogg v. Mackay, 23 Or. 339, 31 P. 779, 19 L. R. A. 77, 37 Am. St. Rep. 682; State v. Richards, 52 N. J. Law, 156, 18 A. 582.

One of the most recent cases construing this section, and one we think conclusive of the case at bar, is Baltimore City v. Starr Church, supra, 106 Md. 281, 67 A. 261, 263, wherein the Legislature granted a tax exemption on certain wharf property deeded to a church. The court said with reference to article 15: "This provision has, with a slight but not material change of phraseology, been a part of the organic law of Maryland for considerably more than a century. Its predominant object is to provide by a fixed enactment equality in taxation, and to prevent, as far as possible, the burden of supporting the government from falling upon some individuals, to the exclusion or exemption of others. It prohibits unjust discriminations, and whilst it remains in force the land owner, be his possessions large or small, will have an absolute and complete guaranty that public taxes cannot be imposed upon him while others who are equally responsible in the law may have themselves relieved of this burden by the partiality of legislative enactment, without subserving any public policy. Its theory is that the distribution of the burden over every class of property alike will lessen the proportion of each individual's contribution, whereby oppressive exactions from the owners of any particular class of property will be impossible. This has been the uniform and consistent principle always followed in Maryland, eminently just in itself as a sound and long-accepted axiom of political economy. It has been incorporated in her organic law since November 3, 1776. It has been upheld by her courts and steadily

and tenaciously adhered to by her conservative people."

And in condemning the attempted exemption the court observed: "If the Legislature may lawfully do this in this particular instance, why not in another, and another, until there would be an almost indefinite number of exemptions, and we think such acts should be stricken down as null, and inoperative, repugnant to the organic law, and prolific of obvious abuses."

In recognizing the power of the Legislature to exempt certain classes of property, the court said: "It will not be denied at this late day that the Legislature has the power, within reasonable limits, to exempt certain species or classes of property from taxation, when the public interests so require. * * * But it will be perceived in these cases all the property of the class indicated is exempted. * * * There is therefore no arbitrary discrimination between different properties of the same kind, but all are treated alike."

The court pointed out that no classification at all had been made in the case before it, and continued: "So that where the revenue producing property of all other churches continues taxable, and the revenue producing property of this church is made exempt, such exemption can be nothing else than an arbitrary discrimination between the property of the appellee and all other property of the same species or kind held by similar corporations, and such an arbitrary exemption must be void under article 15 of the Declaration of Rights. Not only is it unlawful for the Legislature to exempt one man's property and tax another of exactly the same kind, but the Legislature may not impose a tax upon the property of one person at one rate, and upon the property of another at a different rate. A fortiori, the Legislature should not tax the revenue producing property of all churches except one, and for this prescribe, not a different rate, but no rate at all; in other words, exemption."

In Wells v. Commissioners of Hyattsville, 77 Md. 125, 26 A. 357, 359, 20 L. R. A. 89, where an act applicable to Hyattsville, Prince George's County, exempting all personal property from taxation, was held unconstitutional as in violation of article 15, the court said: "Its predominant object is to provide, by a fixed enactment, equality in taxation, and to prevent, as far as possible, the burden of supporting the government from falling upon some individuals to the exclusion or exemption of others. * * * Its theory is that the distribution of the burden over every class of property alike will lessen the proportion of each individual's contribution, whereby oppressive exactions from the owners of any particular class of property will be impossible. * * * Under the pretext of granting exemptions, different classes of property cannot be successfully stricken from the tax lists so as to destroy the equality prescribed by the fundamental law, and eventually to reduce the taxable basis to one kind of property alone. Reducing the taxable basis to land by first excluding personal property altogether, and then excepting buildings and improvements, is a perversion, and not a legitimate exercise, of the conceded authority to make valid exemptions. If this be not so, then the very power to exempt might be carried to the length contended for, and, if carried that far, it would effectually abrogate the fifteenth article of the declaration of rights."

Similarly in Schley v. Lee, 106 Md. 390, 67 A. 252, 257, where the statute provided for deduction of the value of Baltimore City stock in assessing the value of shares of a corporation holding same, but made no such provision in the case of an individual, the tax commissioner was restrained from making such deduction as being unconstitutional; the court saying: "A further, and from a legal standpoint more serious, result that would follow the adoption by the tax commissioner of his proposed plan of assessing this company's assets would be an unjust and unlawful discrimination between the liability of Baltimore City stock and like securities to taxation when held by a private person and their practical exemption from that liability when held by a corporation. Such result as that involves a violation of the basic principle of equality and uniformity of taxation asserted by article 15 of the Declaration of Rights, which cannot be viewed with the slightest degree of toleration by this court. The power of the Legislature, when state policy and the public interests require it, to exempt, within reasonable limits, certain classes of property from taxation, has been recognized by numerous decisions of this court; but it has always been held that the power cannot be so exercised as to destroy the equality prescribed by the fundamental law. Wells v. Hyattsville, 77 Md. 140, 26 A. 357, 20 L. R. A. 89; [County Com'rs of] Prince George's County v. [Com'rs of] Laurel, 70 Md. 443, 17 A. 388, 3 L. R. A. 528; Simpson v. Hopkins, 82 Md. 478, 33 A. 714."

And in Baltimore v. Cahill, 126 Md. 596, 95 A. 473, 474, the court declared unconstitu-

tional the exemption of property owners, benefited by the opening of certain sections of a highway, from assessment under the general law. The court said: "The effect of Acts 1914, c. 470, we think, is to create an arbitrary and unreasonable exemption from taxation and is not based upon a proper and reasonable classification. * * * It makes a discrimination in favor of the owners of property abutting upon this street which is denied to the owners of property abutting upon every other street in Baltimore city which has been or which may hereafter be opened. * * * It does not relate to a species, but to particular individuals of a class."

■ The receiver relies upon a line of Maryland cases which recognize the validity of the exemption from taxation of the Baltimore & Ohio Railway Company and certain other corporations, granted at the time that these corporations were organized. Typical of these cases are State v. B. & O. R. Co., 48 Md. 49 and B. C. & A. R. Co. v. Ocean City, 89 Md. 89, 42 A. 922. We think, however, that there is a manifest difference between the state's granting an exemption from taxation to persons who propose to organize a corporation which will presumably be of benefit to the public, as an inducement to capitalists to invest money in the enterprise (see Mayor, etc., v. B. & O. Railroad, 6 Gill [Md.] 288, 48 Am. Dec. 531), and granting an exemption to a corporation already organized and engaged in business. In the one case the state is waiving the right to tax in consideration of securing a public benefit; in the other it is granting an exemption without consideration, for, as pointed out above, the railroad having dedicated its property to a public use is not entitled to discontinue the service because of its insolvency. At all events, the cases of State v. B. & O. R. Co. and B. C. & A. R. Co. v. Ocean City were urged upon the Court of Appeals of Maryland as justifying the exemption granted in the Starr Church Case and were held not to justify it; and we must follow the decisions of Maryland as to the meaning of the provisions of the Constitution of that state and as to the application of prior decisions to questions arising thereunder. The only Maryland case since the Starr Church Case considering the validity of a tax exemption statute, Baltimore v. German-American Fire Ins. Co., 132 Md. 380, 103 A. 980, 983, which upheld an exemption from taxation of mortgages held by domestic fire insurance companies, distinguished the Starr Church Case on

the ground that the exemption granted there (as here) "was to a single corporation and not to a class."

■ The argument is made that the statute here in question constitutes a contract with the railroad, just as did the charter of the Baltimore & Ohio, and that same cannot be ignored in view of the fact that the railroad has been operated under and in reliance upon it. The answer to this is that contract cannot be predicated of an unconstitutional statute—that the Legislature cannot bind the state by a statute which it has no power to enact. 26 R. C. L. 305; Memphis, etc., R. Co. v. Gaines, 97 U. S. 697, 24 L. Ed. 1091.

■ Finally, we think that the statute violates article 3, § 33, of the Maryland Constitution, which provides: "The General Assembly shall not pass local or special laws in any of the following enumerated cases, viz.: For extending the time for the collection of taxes, granting divorces, changing the name of any person, providing for the sale of real estate belonging to minors or other persons laboring under legal disabilities, by executors, administrators, guardians or trustees, giving effect to informal or invalid deeds or wills, refunding money paid into the State Treasury, or releasing persons from their debts or obligations to the State, unless recommended by the Governor or officers of the Treasury Department. And the General Assembly shall pass no special law for any case for which provision has been made by an existing general law. The General Assembly, at its first session after the adoption of this Constitution, shall pass general laws providing for the cases enumerated in this section which are not already adequately provided for, and for all other cases where a General Law can be made applicable."

The statute in question is not a law for a special purpose but a special law. It applies not to the public at large or to a class but to a single taxpayer. See the Starr Church Case and 25 R. C. L. 65. It relieves a single corporation from obligations due the state, and does this without recommendation of the Governor or officers of the Treasury Department. Moreover, it deals with a matter covered by the general law, i. e. taxation and exemption therefrom. See Code of Maryland, Supp. 1929, article 81, § 6, paragraphs 1 and 2; section 7, paragraph 16; section 7, paragraph 21. It would seem to require neither argument nor citation of authority to establish that this constitutional provision was intended to prevent exactly the sort of thing

attempted by this statute, viz. the granting of special benefits or exemptions to particular individuals with respect to matters covered by the general laws of the state. The Starr Church Case is directly in point. The court there said:

"Again, we think this act is invalid because in conflict with article 3, § 33, of the Constitution of Maryland, which provides that 'the General Assembly shall pass no special law for any case for which provision has been made by an existing general law.' Section 4, art. 81, of the Code, title 'Exemptions,' specifies several different classes of property which shall be exempt from taxation, viz.: 'To houses or buildings used exclusively for public worship, nor to the furniture contained therein, nor to the parsonage connected therewith, nor to the ground appurtenant to such houses, nor to buildings so exclusively used for public worship or as parsonages which are necessary for the respective uses thereof.' All property of the kind thus described is exempt from taxation. Here, then, is a general law declaring in what cases the property of religious bodies shall be exempt, and specifying in detail just what kinds of such property shall enjoy exemption; but Acts 1904, p. 474, c. 263, is a special law providing exemption for the property of a religious body. When the cases in which the property of religious bodies shall have exemption are already covered by a general law, it is a special law for a case for which provision has been made by an existing general law, and as such is void because in contravention of article 3, § 33, of the Constitution.

"We think, in the present case, that this is a special law exempting the wharf property of the appellee from municipal taxation, and is void, because it relates to the exemption from taxation of the property of a religious body, and this is a subject for which provision has already been made by an existing general law, namely, article 81, section 4, of the Code. The special laws contemplated by the Constitution are those that provide for individual cases. The object of the provision of the Constitution relied on was to prevent the abuses that occurred in the great multiplicity of legislation for particular and individual cases, and not to prevent legislation to meet the wants of communities less extensive in their territorial limits than the state."

See, also, Com'rs of Prince George's County v. B. & O. R. Co., 113 Md. 179, 77 A. 433; Baltimore City v. Allegany County, 99 Md. 1, 57 A. 632; Crisfield v. C. & P. Tel. Co., 131 Md. 444, 102 A. 751; Westminster v. Consolidated Public Utilities Co., 132 Md. 374, 103 A. 1008.

We have examined the cases of Mayor, etc., of Baltimore v. United Railways, 126 Md. 39, 94 A. 378, and Board of Police Com'rs v. McClenehan, 131 Md. 315, 101 A. 786, and we do not think that they are in point. In both, the acts in question were upheld on the ground that they dealt with matters not covered by general laws.

For the reasons stated, we think that there was error in the decisions rendered by the court below, and same are accordingly reversed and the cases remanded for further proceedings not inconsistent herewith.

Reversed.